# Illinois Official Reports

## Appellate Court

---

> ## *People v. Khan*, 2021 IL App (1st) 190051

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADEEL KHAN, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>No. 1-19-0051 |
| Filed | June 30, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-19247; the Hon. Alfredo Maldonado, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Beverly M. Jones, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Janet C. Mahoney, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justice Reyes concurred in the judgment and opinion.<br>Justice Lampkin specially concurred, with opinion. |

**OPINION**

¶ 1        In 2011, defendant Adeel Khan[1] was convicted of aggravated driving under the influence (DUI) of alcohol while driving without a valid driver's license (625 ILCS 5/11-501(a)(1), (d)(1)(H) (West 2008)) and sentenced to two years' probation. The instant appeal arises from the trial court's finding that defendant violated his probation by failing to report to his probation officer. On appeal, defendant claims that the trial court erred in permitting defendant to waive his right to counsel and that the trial court should have conducted a fitness hearing because of defendant's behavior both before and during the violation of probation hearing. For the reasons that follow, we reverse.

¶ 2                                        BACKGROUND

¶ 3        On August 4, 2011, defendant was convicted in case No. 09 CR 19247 of aggravated DUI of alcohol while driving without a valid driver's license and was sentenced to two years' probation by Judge Clayton Crane. On March 6, 2012, the State filed a petition for violation of probation, alleging, *inter alia*, that defendant had been subsequently convicted of unlawful use of a weapon and theft. On March 20, 2013, the State filed a supplemental petition for violation of probation, alleging, *inter alia*, that defendant had failed to report to his probation officer since December 6, 2012, and the State ultimately proceeded with only the reason set out in its supplemental petition. On the same date, defendant failed to appear in court, and the trial court issued a warrant for his arrest.

¶ 4        The warrant was executed on December 19, 2017, as a result of defendant's arrest for another aggravated DUI of alcohol offense in case No. 18 CR 00256.[2] The violation of probation proceedings and the proceedings concerning the new DUI charge then continued largely in conjunction. As one of the issues on appeal in the instant case involves the question of defendant's waiver of his right to counsel, we first relate the facts concerning the admonishments defendant received as to that waiver before discussing the proceedings more generally.

¶ 5                                   I. Waiver of Counsel
¶ 6                          A. Admonishments as to New DUI Charges
¶ 7        Defendant was present in court on January 18, 2018, before Judge Alfredo Maldonado at the arraignment of the DUI charge when he was informed that he had two matters pending—the violation of probation and the new DUI charge. The trial court asked defendant if he had an attorney, and defendant stated that he wished to represent himself. The court informed defendant that he had the right to an attorney and, if he could not afford one, one would be provided for him. However, defendant stated that he wished to represent himself "because I know the whole story of this new matter." The court then informed defendant as to the nature of the DUI charges against him and the sentencing range as follows:

---

[1]The record shows that defendant is known both as Adeel Khan and as Muhammad Adeel Khan.

[2]Defendant's appeal of the conviction resulting from that case is considered in appeal No. 1-19-0679, which is being filed concurrently with the instant opinion.

"So [defendant], you are here for—the new matter is the offense in a four count information. The State is alleging that you committed the offense of aggravated driving under the influence of alcohol, which allegedly occurred on the date of on or about December 18, 2017, at and within the County of Cook. And they allege that in a four count information. This is charged as a Class 2 because of your background. You allegedly have two other previous driving under the influence of alcohol convictions.

So based on your background, the State is asking that you be sentenced as a Class 2—under Class 2 sentencing guidelines. ***

***

So [defendant], you are facing in Count 1 an aggravated driving under the influence, a Class 2 version. And in Counts 2, 3, and 4 you are charged with Class 4 aggravated driving under the influence of alcohol.

A Class 4 felony is punishable by a minimum of one and a maximum of three years with one year of mandatory supervised release. You can be placed on probation for up to 30 months.

On a Class 2 felony, which is what you are charged with in Count Number 1, the sentencing range is a minimum of three and a maximum of seven years in the penitentiary with two years of mandatory supervised release. You can be placed on probation for up to four years. And on all of these things you can be fined up to $25,000 as well, all right, [defendant]?"

In response, defendant stated: "Judge, actually this case is not supposed to exist because I was not driving." The court cautioned defendant that a court reporter was present, so he should not say anything that would harm his case.

¶ 8    The court then questioned defendant about his education and whether he had any legal training or knowledge. After determining that defendant had no legal knowledge, the court cautioned defendant that, "[b]y you representing yourself in this matter, you put yourself at a huge disadvantage," which was why defendant had the right to an attorney. Defendant responded that he understood and asked, "[w]ill you just give me a chance to speak for a few seconds please?" The court told defendant "that's not how this works. You don't just talk to me. The State's trying to put you in prison. You have a right to a trial." The court then asked defendant whether he was pleading guilty or not guilty, and defendant responded that he was not guilty. The court asked if defendant was waiving the formal reading of the charges, and defendant responded: "Judge, I'm not—Everything—Every question I am going to say no because I'm not—this case is not supposed to be existing from nowhere, Judge, because I was not driving. I was not in the car."

¶ 9    At that point, the court stated that it "[had] some concerns" about defendant so, before proceeding any further, it would order a behavioral clinical examination (BCX). The court further stated that it would not proceed on the arraignment at that time, as defendant had requested to represent himself *pro se* and the court wished to review the results of the BCX before making a decision.

¶ 10     On February 16, 2018, the trial court stated that, after completing a BCX, Dr. Nishad Nadkarni, a forensic psychiatrist, opined that defendant was fit to stand trial.[3] The court then asked defendant if he still wished to represent himself on the new DUI charge, and defendant responded that he did. The court again advised defendant that he had the right to counsel, and defendant stated that he understood. The court reminded defendant that, if he could not afford an attorney, one would be provided for him and stated:

> "I have the Public Defenders here; and I'll appoint an attorney from the Public Defender's Office to represent you on the new case, and on the violation of probation that you have, because you have two matters.
> ***
> You have a probation case and the new matter."

Defendant stated that he understood, and the court again asked defendant about his knowledge of legal procedure, reminding him that, "if you represent yourself, I can't give you legal advice. I can't treat you any differently than I would treat anyone else." The court also again informed defendant of the nature and sentencing range for the new DUI charge, and defendant responded that "I understand definitely." After further discussion with defendant, the trial court stated: "All right. You may represent yourself on the new case and the [violation of probation]." The court then proceeded with the arraignment on the new DUI charge, and defendant entered a plea of not guilty.

¶ 11                          B. Admonishments as to Violation of Probation

¶ 12     On April 6, 2018, while the parties were before the trial court on a motion to dismiss that had been filed by defendant in the new DUI matter, the court asked the State about outstanding discovery and asked whether the State was electing to proceed first on the probation matter or on the new DUI charge. The assistant state's attorney responded that the State would be proceeding first on the probation matter. Defendant then interjected, stating that he "would like to transfer this matter to the federal court." The court asked defendant to listen and then admonished him that the State was electing to proceed on the probation matter first. The court informed defendant that the State was required to prove the violation of probation by a preponderance of the evidence, not beyond a reasonable doubt. Defendant told the court that he was going to "reopen the probation matter," and the court responded that the State would be proceeding first on the probation matter. The court further informed defendant:

> "You have a right to have a violation of probation hearing. The State has to prove by a preponderance of the evidence that you have violated the probation. They will call witnesses. You will have an opportunity to cross examine those witnesses.
>
> In a *** violation of probation matter, at a hearing, you have a right to counsel. If you can't afford one, one would be appointed to represent you."

Defendant again responded that he "would like a trial in federal court." The court informed defendant that there was no basis for removal to federal court, and defendant stated that he was

---

[3]A letter from Dr. Nishad Nadkarni, a forensic psychiatrist with Forensic Clinical Services, is contained in the record for appeal No. 1-19-0679. While the letter provides that Dr. Nadkarni opined, to a reasonable degree of medical and psychiatric certainty, that defendant was fit to stand trial, the psychiatric summary outlining the basis for that opinion does not appear in the record for either appeal.

- 4 -

going to "contact them" and "beg them." The court then again asked the State about outstanding discovery, and the assistant state's attorney responded that the only outstanding issue was obtaining video of defendant's arrest on the new DUI charge. Defendant expressed confusion about what video the State was referring to, and the court explained: "The basis of the probation violation, they are claiming that you violated probation by getting arrested for the DUI, the new matter. So that's going to be the basis of the violation. So if there is video, you will get a chance to see that video."[4]

¶ 13        On August 15, 2018, the parties appeared before the trial court for a hearing on the violation of probation. The court again reminded defendant that he had the right to counsel for both the probation matter and the new DUI charge and that, if he could not afford one, one would be provided for him. The court also informed defendant that the State was required to prove a violation of probation by a preponderance of the evidence, that he had the right to cross-examine the State's witnesses and present evidence on his own behalf, and that he had the right to testify. In the State's opening statement, the State began by noting that there had been several petitions for violation of probation filed and that the State would be proceeding on the basis of defendant's failure to report to his probation officer. The State further indicated that defendant had a 2011 arrest for unlawful use of a weapon and theft that would serve as another basis for its petition but later decided not to proceed on that basis and proceeded on the basis that defendant did not report to his probation officer.

¶ 14        At the conclusion of the hearing, the court found that defendant had violated his probation by failing to report to his probation officer. Defendant then announced that he was "vacating the probation" and that he was "not guilty for this matter at all." The court set a date for a sentencing hearing and informed defendant that he could be sentenced to a minimum of one year and a maximum of three years in the Illinois Department of Corrections. Defendant responded that "I'm going to vacate that. I'm going to bring some kind of law to vacate this probation matter *** [b]ecause I'm not even guilty for this matter, your Honor." This appears to be the first time that the trial court informed defendant as to the sentencing range for the violation of probation matter, and the State concedes on appeal that the trial court did not admonish defendant as to the sentencing range at any point before the hearing.

¶ 15                                          II. Defendant's Fitness

¶ 16        The other major issue in the case at bar is defendant's fitness. As defendant's arguments on appeal are based on his overall conduct during the court proceedings, we relate here a general overview of the proceedings. We repeat information already discussed above only as necessary to provide context for defendant's fitness argument.

¶ 17        As noted, defendant appeared before the trial court for an arraignment on the new DUI charges on December 19, 2017. When the court asked defendant if he had an attorney, defendant responded that he wished to represent himself "because I know the whole story of this new matter." The trial court then informed defendant as to the nature of the DUI charges against him and the sentencing range. In response, defendant stated: "Judge, actually this case

---

[4]The trial court was incorrect in stating that the basis of the probation violation was the arrest for the new DUI, when the petition and supporting petition filed by the State did not indicate the new DUI charge.

is not supposed to exist because I was not driving." The court cautioned defendant that a court reporter was present, so he should not say anything that would harm his case.

¶ 18 The court then questioned defendant about his education and whether he had any legal training or knowledge. After determining that defendant had no legal knowledge, the court cautioned defendant that, "[b]y you representing yourself in this matter, you put yourself at a huge disadvantage," which was why defendant had the right to an attorney. Defendant responded that he understood and asked, "[w]ill you just give me a chance to speak for a few seconds please?" The court told defendant "that's not how this works. You don't just talk to me. The State's trying to put you in prison. You have a right to a trial." The court then asked defendant whether he was pleading guilty or not guilty, and defendant responded that he was not guilty. The court asked if defendant was waiving the formal reading of the charges, and defendant responded: "Judge, I'm not—Everything—Every question I am going to say no because I'm not—this case is not supposed to be existing from nowhere, Judge, because I was not driving. I was not in the car."

¶ 19 At that point, the court stated that it "[had] some concerns" about defendant so, before proceeding any further, it would order a BCX. The court further stated that it would not proceed on the arraignment at that time, as defendant had requested to represent himself *pro se* and the court wished to review the results of the BCX before making a decision. The court informed defendant that he would meet with doctors for an evaluation. Defendant responded, "Okay. No problem, but, Judge, you give me a few seconds so I can speak with you, Judge, about my case." The court again informed defendant "[t]hat's not how this works," but defendant continued attempting to speak with the court about the case.

¶ 20 On February 16, 2018, the trial court stated that, after completing a BCX, Dr. Nadkarni opined that defendant was fit to stand trial, then asked defendant if he still wished to represent himself on the new DUI charge. Defendant responded that he did. The court again advised defendant that he had the right to counsel, and defendant stated that he understood. The court reminded defendant that, if he could not afford an attorney, one would be provided for him. Defendant stated that he understood, and the court again asked defendant about his knowledge of legal procedure, reminding him that, "if you represent yourself, I can't give you legal advice. I can't treat you any differently than I would treat anyone else." The court also again informed defendant of the nature and sentencing range for the new DUI charge, and defendant responded that "I understand definitely." After further discussion with defendant, the trial court stated: "All right. You may represent yourself on the new case and the [violation of probation]." The court then proceeded with the arraignment on the new DUI charge, and defendant entered a plea of not guilty.

¶ 21 On the same day, defendant filed a *pro se* motion to dismiss based on double jeopardy, in which defendant claimed that the DUI matter was previously tried on December 22, 2017, and the trial court found no probable cause. Defendant also wrote a letter[5] to the trial court:

"First and foremost I would like to apologize for my misbehaving in your court room on 01-16-18. This was my first time in a court room without [a] private attorney. I felt that the [State's attorneys] were being very hard on me and it made me very stressful. For a false matter being discussed about me. That on 12-18-17 [the] officer

---

[5]The motion to dismiss and defendant's letter are both contained in the record on appeal in case No. 1-19-0679.

created a case against me and on 12-22-17 [the preceding] judge on my case dropped all charges.

I am very wrong for my words I used on that day in your court room, the words I said were out of stress and anger, the words I said were that I wanted a jury trial and I would like to take my words back. I promise that in the future I will always think about my words before I speak them. I would like to ask the Honorable Judge to be my jury in this matter. I pray and hope my request is granted."

¶ 22    Defendant's motion was not ruled upon on that date but was considered when the parties next came before the court on February 23, 2018. The trial court informed defendant that he was not permitted to write letters to the court but that the court had read defendant's apology. As to defendant's motion to dismiss, the court asked the State whether, in fact, there had been a finding of no probable cause, as defendant contended. The State provided the court with a transcript of the preliminary hearing proceedings on December 22, 2017, in which the court made a finding of probable cause as to one DUI count but made a finding of no probable cause as to another count. Defendant interrupted, claiming that the transcript was "not the right transcript." The court explained that the transcript was the official court record of the proceedings, but defendant claimed that it was a "false transcript." The court found no basis for defendant's motion and denied the motion to dismiss.

¶ 23    On March 9, 2018, defendant again filed a motion to dismiss based on double jeopardy, again claiming that all charges against him had been dismissed on December 22, 2017. Defendant filed a third motion to dismiss based on double jeopardy on April 6, 2018, adding claims of "perjury" based on the State's providing "false transcripts" of the preliminary hearing.[6] The parties came before the court on April 6, 2018, where defendant again claimed that the transcript of the preliminary hearing was a "false transcript." Defendant claimed that the trial court found no probable cause at the preliminary hearing but that he was later taken to the courthouse in Skokie, where the state's attorney told the court that defendant was being "reindict[ed]" on a "2009 pending matter." The judge hearing the matter told the state's attorney to "send him back to Cook County to the same judge who [had the] 2009 matter pending." Defendant claimed that "[s]o that means *** [the] honorable judge [at the] Skokie court [didn't] want to reindict me for the matter being closed on preliminary hearing December 22." The court then addressed defendant:

"THE COURT: [Defendant], you clearly don't understand what's going on.

DEFENDANT: I understand exactly, your Honor, what's going [on].

* * *

THE COURT: [Defendant], you don't. It is absolutely obvious that you have no understanding.

I told you, [defendant], that you have a right to represent yourself. Right? I told you that. I went over this with you. Right? But you do not understand the law.

DEFENDANT: Your Honor—

THE COURT: You think you do.

DEFENDANT: I understand the law.

THE COURT: But you don't."

---

[6]The motions to dismiss are contained in the record in appeal No. 1-19-0679.

¶ 24   The court then asked the assistant state's attorney to address defendant's claim that there was a later proceeding in which charges against defendant were dismissed. The assistant state's attorney confirmed that there was not, and defendant interjected:

> "DEFENDANT: Okay. January 18, your Honor, the State told you he got the 2006 DUI, 2008 DUI. Remember? You told me 2006 6 DUI for supervision. Then she said 2008 DUI. You told me 30 month probation.
>
> THE COURT: That was a bond hearing. There was a bond hearing.
>
> DEFENDANT: That was a re-indictment, your Honor.
>
> THE COURT: No, no, that's not a re-indictment.
>
> DEFENDANT: Yes, sir.
>
> THE COURT: [Defendant], you are on probation for a 2009 DUI. You have a new case. You have two things before me. Right? You have a probation matter and then you have this new case. There is no re-indictment. That's—
>
> DEFENDANT: Your Honor, when she said—I mean, 2008 DUI, then she said 2011 DUI, then she said 2017 DUI.
>
> THE COURT: She was reading off your criminal history—
>
> DEFENDANT: The reason she was reading, your Honor, because I wasn't at Skokie. And State Attorney said only 2009 DUI pending. Judge denied to reopen.
>
> THE COURT: [Defendant], it is not reopen[ed]. You are on probation. There is a pending violation of probation for the 2009 case. You have two matters."

The court then denied defendant's motions to dismiss. Defendant stated that he would not file any more motions but that he would "come up with something." The court reminded defendant that "what would make things really simple, [is] if you actually allowed yourself to be represented by an attorney." Defendant responded that "I know what I am doing exactly."

¶ 25   The court then asked the State about outstanding discovery and asked whether the State was electing to proceed first on the probation matter or on the new DUI charge. The assistant state's attorney responded that the State would be proceeding first on the probation matter. Defendant then interjected, stating that he "would like to transfer this matter to the federal court." The court asked defendant to listen and then admonished him that the State was electing to proceed on the probation matter first. The court informed defendant that the State was required to prove the violation of probation by a preponderance of the evidence, not beyond a reasonable doubt. Defendant told the court that he was going to "reopen the probation matter," and the court responded that the State would be proceeding first on the probation matter. The court informed defendant that he had a right to a violation hearing, that the State would be required to prove the violation by a preponderance of the evidence, and that the State would call witnesses and defendant would have the opportunity to cross-examine those witnesses. The court also reminded defendant that he had the right to counsel and that, if he could not afford one, one would be appointed to represent him. Defendant again responded that he "would like a trial in federal court." The court informed defendant that there was no basis for removal to federal court, and defendant stated that he was going to "contact them" and "beg them." The court then again asked the State about outstanding discovery, and the assistant state's attorney responded that the only outstanding issue was obtaining video of defendant's arrest on the new DUI charge. Defendant expressed confusion about what video the State was

referring to, and the court explained that the basis of the probation violation was defendant's new DUI arrest,[7] so he would have the opportunity to view any video of the arrest.

¶ 26 The court then spoke with the State about obtaining the video, and defendant interrupted, stating that he was turning himself in when he was arrested for the new DUI charge. Defendant further stated that, "[t]he same day before I turned myself in, I was trying to contact the federal government, you know. I'm trying to contact the FBI because I'm going to expose some FBI crime." The court then stated that it was going to order another BCX of defendant. Defendant asked why he needed to be evaluated, and the court told him that "I just want to make sure that there [are] no problems or anything."

¶ 27 On May 11, 2018, the parties appeared before the trial court, and the court stated that Dr. Fidel Echevarria, a psychiatrist, had attempted to conduct a BCX of defendant but was unable to render an opinion because defendant was not cooperative, became agitated, and refused to complete the assessment. Defendant also refused to authorize the release of his current medication profile and any treatment.[8] The court informed defendant that he was required to cooperate with the doctor, and defendant agreed to complete the evaluation. On the same day, defendant filed another motion to dismiss the new DUI charge based on double jeopardy and subsequently filed additional motions to dismiss the new DUI charge based on double jeopardy on June 15, 2018, and June 26, 2018.[9]

¶ 28 On June 26, 2018, the parties appeared before the trial court on defendant's motions to dismiss. The court noted that defendant had been evaluated and that he was again found fit to stand trial.[10] Defendant then again stated that the case had been "dismissed in preliminary hearing," and the court responded that "we already addressed all this." Defendant claimed that he had "another question" about the case number. Defendant claimed that the case number of the new DUI charge had been changed and that he was being "reindicted" on a case that had already been dismissed. The assistant state's attorney explained that there was a finding of no probable cause on one count on December 22, 2017, but that there was a finding of probable cause on the second count. Defendant would have received a court date two weeks from that date for the arraignment on that count, which would have been in January 2018. Therefore, when defendant's felony trial number was assigned, it was an "18 CR" number even though

---

[7]As noted, this was incorrect, as the State never listed the new DUI charge as a basis for violation of probation in either the original or supplemental petition for violation of probation.

[8]A letter from Dr. Fidel Echevarria, a psychiatrist with Forensic Clinical Services, is contained in the record on appeal. While the letter provides that Dr. Echevarria could not opine as to defendant's fitness to stand trial due to defendant's lack of cooperation, the psychiatric summary outlining "the basis of [his] opinion or lack thereof" does not appear in the record on appeal.

[9]The May 11 and June 26 motions to dismiss are contained in the record in appeal No. 1-19-0679, while the June 15 motion to dismiss is contained in the record on appeal for the instant case.

[10]A letter from Dr. Brian Curran, a licensed clinical psychologist with Forensic Clinical Services, is contained in the record in appeal No. 1-19-0679. While the letter provides that Dr. Curran opined, to a reasonable degree of psychological and scientific certainty, that defendant was fit to stand trial, Dr. Curran was unable to render an opinion as to defendant's sanity at the time of the alleged offense or his ability to understand the *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1965)), as defendant refused to sign the release of information forms for his treatment records. Additionally, as with the other letters, the psychiatric summary outlining the basis for Dr. Curran's opinion does not appear in the record for either appeal.

the offense and preliminary hearing occurred in 2017. Defendant continued arguing, and the trial court informed defendant that the assistant state's attorney was attempting to explain the situation but "you just aren't understanding it." Defendant then stated that he had a right to "[c]all media on this situation." The trial court verified that discovery was complete and denied defendant's motions to dismiss.

¶ 29        On July 20, 2018, defendant filed a motion for substitution of judge for cause, claiming that the trial judge was prejudiced against him, as well as two more motions to dismiss based on double jeopardy and perjury. The matter was transferred to a different judge for hearing on the motion for substitution of judge, which occurred on July 23, 2018. Defendant again claimed before the new judge that the DUI charge had been dismissed during the preliminary hearing. The court asked the State to respond, and the assistant state's attorney stated:

> "I think he really lacks the ability here to understand the legal procedures here in this case.
>
> There was a finding of probable cause. He is charged by information. He fails to grasp, I believe because he is not a lawyer, *** has never practiced law, the criminal procedure, process of when somebody is charged by indictment and whether somebody is charged by information and how those come after an initial complaint, and an initial municipal case is generated.
>
> So, Judge, what I have done, as my partner has done, as I believe on the record several times, is try to explain that his case number changed because now it is in the felony trial division. It gets the CR number and it no longer has the municipal number and that municipal file, if there is any uncharged items, it would then follow, whether traffic or whatever they may be.
>
> So we tried to explain that and he just—in my view, *** he just doesn't appear to grasp that and that's just—I just don't believe that's grounds for, I don't know, for an SOJ for cause.
>
> Judge Maldonado has attempted to explain that and help him out as much as possible but he is representing himself and I just don't think he is really grasping the legal concept."

¶ 30        Defendant continued to insist that the earlier case had been dismissed, and eventually, the court explained to defendant that, even if everything defendant claimed was true, in order to obtain a substitution of judge for cause, he was required to show that he was prejudiced by the judge's conduct. Defendant then proceeded to relate a chronology of the proceedings in his case, expressing his frustration. At one point, defendant claimed that the assistant state's attorney had laughed at him when he was leaving the courtroom after a prior hearing. The court denied the motion for substitution of judge, finding:

> "As far as what you have explained to me and what I've read in your affidavit and in your motion, I don't see any basis for me to SOJ, to substitute Judge Maldonado for cause. It seems to me that *** you take umbrage and you don't believe that *** he has ruled properly in the case but I'm a little bit at a loss too because *** you're showing me the transcript and you're saying the transcript is incorrect.
>
> You [have] got to be able to *** prove that it's more than just you saying that it's incorrect."

¶ 31		After the denial of the motion for substitution of judge, the case was transferred back to Judge Maldonado, and defendant filed another motion to dismiss based on double jeopardy, which was heard and denied the same day. The State also made defendant an offer on the new DUI case, which defendant declined. On July 26, 2018, defendant again filed another motion to dismiss, which was heard and denied the same day. Similarly, on August 9, 2018, defendant filed another motion to dismiss, which was heard and denied the same day.[11]

¶ 32		On August 15, 2018, the parties appeared before the trial court for a hearing on the State's petition for violation of probation. The State presented the testimony of one witness, Michael Cichowski, defendant's probation officer. Cichowski testified that defendant last reported to him on December 6, 2012, and was scheduled to return on January 10, 2013. Defendant did not report to Cichowski on January 10, so he sent a "failure to report" letter to defendant.[12] Cichowski did not hear back from defendant, so the probation department sent a letter notifying defendant that a petition for violation of probation would be filed and that he would be required to appear in court on March 20, 2013. Cichowski was notified that defendant did not appear in court on March 20, 2013, and that a warrant was issued for his arrest. Cichowski had not heard from defendant since December 6, 2012.

¶ 33		On cross-examination, defendant asked Cichowski why he had to report to probation if he was also required to report to court. Cichowski testified that, when individuals are on probation, they must report to their probation officer on a monthly basis, regardless of whether they are also involved in court proceedings. Defendant then asked, "[w]hat about if [the] judge say[s] you don't have to go back to the probation officer, you have to come back and see me?" Cichowski responded that "[n]owhere was that written."

¶ 34		The State then rested, and the court asked defendant if there was anything he wanted to say or present to the court. Defendant stated[13] that the judge authorized him to report to court instead of to the probation officer, and that he missed a court date due to a "financial issue." Defendant then rested. During closing arguments, defendant argued that he "did miss a court date, and I'm guilty for the court date because I had a financial issue. I had no job, no way to make it to the court. That was the only reason, your Honor." Defendant then argued: "I don't even agree with this case number, 09 CR 192470, your Honor. I don't know where that case number came from." Defendant began arguing about the case, and the trial court interrupted, reminding defendant that "this is not a trial. This is a violation of probation," and that defendant had already been convicted and sentenced on the matter.

¶ 35		The court found that defendant had violated his probation by failing to report to his probation officer. Defendant then announced that he was "vacating the probation" and that he was "not guilty for this matter at all." The court set a date for a sentencing hearing and informed defendant that he could be sentenced to a minimum of one year and a maximum of three years in the Illinois Department of Corrections. Defendant responded that "I'm going to vacate that. I'm going to bring some kind of law to vacate this probation matter *** [b]ecause I'm not even guilty for this matter, your Honor."

---

[11]The July 23, July 26, and August 9 motions to dismiss are contained in the record in appeal No. 1-19-0679.

[12]The letter was not offered as an exhibit and is not contained in the record on appeal.

[13]We note that the report of proceedings does not indicate that defendant was sworn in prior to his comments.

¶ 36    On September 14, 2018, the trial court sentenced defendant to 2½ years in the Illinois Department of Corrections, followed by one year of mandatory supervised release. This appeal follows.

¶ 37                              ANALYSIS

¶ 38    On appeal, defendant claims that he did not knowingly and understandingly waive his right to counsel and that the trial court erred in failing to conduct a fitness hearing as to defendant's fitness to stand trial. We consider each argument in turn.

¶ 39                        I. Waiver of Counsel

¶ 40    Defendant first claims that he did not knowingly and understandingly waive his right to counsel for the violation of probation matter because the trial court did not properly admonish him pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). Defendant acknowledges that he did not properly preserve the issue and asks us to review it for plain error. To preserve a purported error for consideration by a reviewing court, a defendant must both (1) object to the error at trial and (2) raise the error in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48. "Failure to do either results in forfeiture." *Sebby*, 2017 IL 119445, ¶ 48. However, the plain-error doctrine permits a reviewing court to consider an unpreserved claim (1) if a clear or obvious error occurred and the evidence is so closely balanced that this error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) if a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence at defendant's trial. *Sebby*, 2017 IL 119445, ¶ 48; *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "Because the right to counsel is fundamental, we may review a failure to substantially comply with Rule 401(a) under the plain-error doctrine despite a defendant's failure to properly preserve such an error." *People v. Pike*, 2016 IL App (1st) 122626, ¶ 109.

¶ 41    In a plain-error analysis, it is the defendant who bears the burden of persuasion. *Sebby*, 2017 IL 119445, ¶ 51. The first step under either prong of the plain-error doctrine is to determine whether there was an error at trial and whether this error was clear or obvious. *Sebby*, 2017 IL 119445, ¶ 49; *Piatkowski*, 225 Ill. 2d at 565.

¶ 42    In the case at bar, defendant claims that his waiver of counsel was not knowing and intelligent because he was not properly admonished by the trial court. The sixth amendment to the United States Constitution (U.S. Const., amend. VI) guarantees an accused in a criminal proceeding the right to the assistance of counsel. *People v. Jiles*, 364 Ill. App. 3d 320, 328 (2006). Any waiver of that right must be voluntary, knowing, and intelligent. *Jiles*, 364 Ill. App. 3d at 328 (citing *People v. Haynes*, 174 Ill. 2d 204, 235 (1996)).

¶ 43    A defendant's waiver of the right to counsel must be clear and unequivocal. *People v. Mayo*, 198 Ill. 2d 530, 538 (2002); *People v. Burton*, 184 Ill. 2d 1, 21 (1998). The purpose of requiring a clear and unequivocal waiver is to "(1) prevent the defendant from appealing [either] the denial of his right to self-representation or the denial of his right to counsel, and (2) prevent the defendant from manipulating and abusing the system by going back and forth between his request for counsel and his wish to proceed *pro se*." *Mayo*, 198 Ill. 2d at 538. To determine whether a defendant's waiver was clear and unequivocal, a court will look to the

overall context of the proceedings, including the defendant's conduct following the defendant's request to represent himself. *Mayo*, 198 Ill. 2d at 538-39.

¶ 44    Before a trial court can find that a defendant has waived his right to counsel, the court must provide the following three admonishments listed in Rule 401(a) to the defendant:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentences prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 45    We note that our supreme court has never expressly found Rule 401(a) to apply to probation-revocation proceedings. See *People v. Barker*, 62 Ill. 2d 57, 59 (1975) ("We have not previously considered the question whether, as held by the appellate court, Rule 401(a) [citation] applies to waiver of counsel at a probation revocation hearing."). However, in *Barker*, our supreme court found that "[g]ood practice requires that there be a definitive standard by which a knowing and understanding waiver of counsel in a probation revocation proceeding may be determined." *Barker*, 62 Ill. 2d at 59. The *Barker* court then set forth requirements largely paralleling the requirements of Rule 401(a):

"The circuit court should not permit the offender to waive counsel unless it determines, by addressing him in open court, that the offender understands: (1) the purpose of the revocation proceeding and the nature of the violation of the condition of probation upon which it is based; (2) that he has the right of confrontation, cross-examination and representation by counsel and that if he is indigent he has the right to appointed counsel; [and] (3) the minimum and maximum sentence which may be imposed if the probation is revoked." *Barker*, 62 Ill. 2d at 59.

See also *People v. Baker*, 94 Ill. 2d 129, 132-33 (1983) (setting forth requirements of Rule 401(a) in a probation-revocation proceeding, prior to discussing standard set forth in *Barker*).

¶ 46    Rule 401(a) helps ensure that a defendant's waiver is knowing and voluntary, and our supreme court has held that "compliance with Rule 401(a) is required for an effective waiver of counsel." *Haynes*, 174 Ill. 2d at 236 (citing *Baker*, 94 Ill. 2d at 137). However, strict compliance with Rule 401(a) is not required, and "substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights." *Haynes*, 174 Ill. 2d at 236 (citing *People v. Coleman*, 129 Ill. 2d 321, 333 (1989)). The legal issue of whether the trial court substantially complied with Rule 401(a) is reviewed *de novo*, while the ultimate question of whether the defendant's waiver of counsel was knowing and voluntary is reviewed for an abuse of discretion. *Pike*, 2016 IL App (1st) 122626, ¶ 114. *De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform (*People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 68), while an abuse of discretion is found only "where the [trial] court's ruling is arbitrary, fanciful, unreasonable, or

where no reasonable person would take the view adopted by the trial court" (internal quotation marks omitted) (*People v. Baez*, 241 Ill. 2d 44, 106 (2011)).

¶ 47　　In the case at bar, defendant contends that he was not properly admonished as to the nature of the offense or of the sentencing range. The instant case is somewhat unusual, as defendant had both the probation and the DUI matters pending before the same judge at the same time. The first time the issue of counsel came up was during the January 18, 2018, arraignment on the new DUI charge, at the same time the State's petition for violation of probation was also pending. Defendant told the trial court that he wished to represent himself. At that time, the court informed defendant as to his right to an attorney and informed him of the nature and sentencing range for the new DUI charges. The court did not discuss the violation of probation, other than to inform defendant at the beginning of the arraignment that he had two matters pending. The court also ordered a BCX of defendant. On February 16, 2018, after the completion of the BCX, the court again addressed defendant's wish to represent himself with respect to the new DUI charges, but it did not discuss his *pro se* representation on the probation charge. Defendant confirmed that he still wished to represent himself, and the court reminded him that he had the right to an attorney and that the court would appoint one if defendant could not afford one. The court also reminded defendant that he had two matters pending—the probation and the DUI charge—and that the public defender's office could be appointed to represent him on both matters. The court then again informed defendant of the nature and sentencing range for the new DUI charge. After further discussion with defendant, the trial court stated: "All right. You may represent yourself on the new case and the [violation of probation]." The court then proceeded with the arraignment on the new DUI charge, and defendant entered a plea of not guilty.

¶ 48　　The State indicated that it would be proceeding first on the probation matter on April 6, 2018. During that hearing, the court informed defendant that he had a right to a hearing on the petition for violation of probation, which required the State to prove that he had violated his probation by a preponderance of the evidence. The court further informed defendant that he had the right to counsel and the right to cross-examine the State's witnesses at the hearing. The court also incorrectly informed defendant that the basis of the probation violation was defendant's arrest for the new DUI charge. Defendant continued arguing about the new DUI charge, and the court ordered another BCX.

¶ 49　　The probation matter was not discussed again until August 9, 2018. The court observed that there were "multiple bases for the violation" and set the matter for hearing on August 15. Defendant attempted to make an argument about the probation matter, and the court informed him that he would have "every right to argue" on August 15. While it is not entirely clear from the record, it also appears that defendant requested a copy of "[w]here *** the probation arise[s] from," which the court told him he would receive "in back."

¶ 50　　On August 15, 2018, when the parties appeared before the trial court for a hearing on the violation of probation, the court reminded defendant that he had the right to counsel for both the probation matter and the new DUI charge and that, if he could not afford one, one would be provided for him. The court also informed defendant that the State was required to prove a violation of probation by a preponderance of the evidence, that he had the right to cross-examine the State's witnesses and present evidence on his own behalf, and that he had the right to testify. The State began by noting that there had been several petitions for violation of

probation filed and that the State would be proceeding on the basis of defendant's failure to report to his probation officer.[14] Defendant was also provided with a copy of the petition.

¶ 51　　It is clear that, in the case at bar, the violation of probation matter was treated by the parties as secondary to the DUI matter. As a result, examining the record as a whole, we must conclude that the trial court failed to substantially comply with Rule 401(a) and the requirements of *Barker* in admonishing defendant with regard to the probation matter. There is no dispute that defendant was informed of his right to counsel—the trial court repeatedly informed defendant of this right throughout the proceedings and suggested that defendant would be better served by permitting counsel to represent him. However, defendant was not adequately informed of either the nature of the offense or the applicable sentencing range, meaning that we cannot say that his waiver of counsel was knowing and voluntary.

¶ 52　　First, it is clear that the trial court did not inform defendant of the minimum and maximum sentence of the violation of probation until after it found that defendant had violated his probation, and the State also acknowledges the trial court's omission. If this was the only error in the court's admonishments, we could still find substantial compliance with Rule 401(a). See *People v. Redmond*, 2018 IL App (1st) 151188, ¶ 26 (finding that the error did not necessitate reversal despite the fact that the trial court had failed to admonish the defendant as to the possible penalty that could be imposed). But see *People v. Roberts*, 56 Ill. App. 3d 126, 127-28 (1978) (finding no knowing and understanding waiver of counsel where the defendant was not admonished as to the minimum and maximum sentence that could be imposed).

¶ 53　　However, the trial court also failed to ensure that defendant understood "the purpose of the revocation proceeding and the nature of the violation of the condition of probation upon which it is based." *Barker*, 62 Ill. 2d at 59. In the case at bar, the trial court often mentioned that defendant was before it on two matters, not simply the new DUI charge, so defendant was frequently informed that the probation matter was pending. However, simply being aware that there was a probation proceeding does not mean that defendant was adequately informed of the nature of the alleged violation leading to that proceeding. The record is clear that defendant was never informed of the basis on which the State was proceeding until the hearing itself began. Prior to setting a hearing on the probation violation, the court noted that there were multiple bases for the violation but did not specify what those bases were; it also appears that defendant was provided a copy of the petition and supplemental petition at that time. On the day of the hearing, the State specified which two of the bases it was proceeding on and again gave defendant a copy of the petitions. While defendant was provided with copies of the State's petitions for violation of probation, the petitions listed eight different bases for alleged violations, meaning that defendant would have had no way of knowing on which basis the State was proceeding until the time of the hearing.

¶ 54　　Moreover, the trial court at one point *did* set forth "the basis" for the probation violation but provided inaccurate information to defendant. On April 6, 2018, the trial court informed defendant: "The basis of the probation violation, they are claiming that you violated probation by getting arrested for the DUI, the new matter." This was not the case—the new DUI charges were not listed as a basis for either the State's original or supplemental petitions, and the State did not proceed on that basis. However, nobody ever corrected the trial court's misstatement,

---

[14]As noted, the State also initially indicated that defendant had a 2011 arrest that would serve as another basis for its petition but later decided not to proceed on that basis.

leaving defendant with the impression that the basis for the violation of probation was the new DUI charges. It was not until the August 15, 2018, hearing date that defendant would have been able to discover that this was not the actual basis for the petitions. Thus, defendant would have spent the four intervening months under the impression that the State was pursuing an entirely different basis, despite what he had been told by the trial court.

¶ 55    As noted, our supreme court has instructed that, while compliance with Rule 401(a) is required for an effective waiver of counsel, strict compliance with Rule 401(a) is not always required. *Haynes*, 174 Ill. 2d at 236. Instead, "substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights." *Haynes*, 174 Ill. 2d at 236; see also *People v. Johnson*, 119 Ill. 2d 119, 132 (1987).

> "Substantial compliance occurs when any failure to fully provide admonishments does not prejudice defendant because either: (1) the absence of a detail from the admonishments did not impede defendant from giving a knowing and intelligent waiver or (2) defendant possessed a degree of knowledge or sophistication that excused the lack of admonition." *Pike*, 2016 IL App (1st) 122626, ¶ 112.

See also *Redmond*, 2018 IL App (1st) 151188, ¶ 25.

¶ 56    Similarly, in the context of probation-revocation proceedings, our supreme court has made clear that the important question "is not whether the failure to comply with Rule 401(a) of itself renders the waiver ineffective, but whether, considering the entire record, the defendant was shown to have knowingly and understandingly waived his right to counsel." *Barker*, 62 Ill. 2d at 59; *Baker*, 94 Ill. 2d at 133; see also *People v. Nemec*, 2019 IL App (2d) 170382, ¶¶ 15-21 (considering whether there was substantial compliance with Rule 401(a) in proceedings to revoke defendant's supervision); *People v. Gilkey*, 263 Ill. App. 3d 706, 711 (1994) (considering whether defendant had been adequately admonished under Rule 401(a) in probation-revocation proceedings where State later added different offense to violation petition).

¶ 57    In the case at bar, we cannot find that the record shows that defendant knowingly and understandingly waived his right to counsel. First, as the State concedes, defendant was not informed as to the minimum and maximum sentence he faced if his probation was revoked. More importantly, however, defendant was not informed of the nature of the violation of the condition of probation on which the State's petitions were based until the beginning of the hearing itself. Even more egregiously, defendant was *incorrectly* informed about the basis for the violation petition, which would have left him with the entirely understandable impression that, if he succeeded in challenging the new DUI charges, his probation violation would also be dismissed.

¶ 58    We find the case at bar similar to that of *People v. Barker*, 23 Ill. App. 3d 598 (1974), a decision that was later affirmed by our supreme court in *Barker*, 62 Ill. 2d 57. In that case, the appellate court considered a probation-revocation matter in which the defendant represented himself. *Barker*, 23 Ill. App. 3d at 600. On appeal, the defendant claimed that he did not effectively waive his right to counsel because he had never been properly admonished. *Barker*, 23 Ill. App. 3d at 600. The appellate court found the requirements of Rule 401(a) applicable to a probation-revocation proceeding and found that "an examination of the record reveals that prior to defendant's waiver of his right to counsel he was not admonished of either the nature of the charges contained in the petition to revoke or the minimum and maximum sentences

- 16 -

prescribed by law for the original offense." *Barker*, 23 Ill. App. 3d at 601. Since the defendant had not been properly admonished, the appellate court reversed and remanded for further proceedings. *Barker*, 23 Ill. App. 3d at 601. The supreme court later affirmed the appellate court's judgment. *Barker*, 62 Ill. 2d at 59. While the supreme court noted that it had never expressly held that Rule 401(a) was applicable to probation-revocation proceedings, it nevertheless found that the important question "is not whether the failure to comply with Rule 401(a) of itself renders the waiver ineffective, but whether, considering the entire record, the defendant was shown to have knowingly and understandingly waived his right to counsel." *Barker*, 62 Ill. 2d at 59. The court then found that an examination of the record demonstrated that "it fails to show a knowing and understanding waiver of counsel." *Barker*, 62 Ill. 2d at 59.

¶ 59   As in *Barker*, an examination of the record fails to show a knowing and understanding waiver of counsel, because defendant was not informed of the nature of the alleged violation of probation and was not informed of the minimum and maximum sentence that he faced if he was found to have violated his probation. Consequently, we must conclude that a clear error has occurred. See *Sebby*, 2017 IL 119445, ¶ 49 (the first step in a plain-error analysis is determining "whether there was a clear or obvious error at trial"). The next step, then, is determining whether the error rises to the level of plain error.

¶ 60   Because the right to counsel is fundamental, courts have reviewed a trial court's compliance with Rule 401(a) under the second prong of the plain-error doctrine. See, *e.g.*, *Pike*, 2016 IL App (1st) 122626, ¶ 109; *People v. Vázquez*, 2011 IL App (2d) 091155, ¶ 14; *People v. Vernón*, 396 Ill. App. 3d 145, 150 (2009); *People v. Stoops*, 313 Ill. App. 3d 269, 273 (2000); *People v. Langley*, 226 Ill. App. 3d 742, 749 (1992). Where, as here, a defendant claims second-prong plain error, "a reviewing court must decide whether the defendant has shown that the error was so serious it affected the fairness of the trial and challenged the integrity of the judicial process." *Sebby*, 2017 IL 119445, ¶ 50. If the defendant carries that burden, "[p]rejudice to the defendant is presumed because of the importance of the right involved," regardless of the strength of the evidence. *People v. Herron*, 215 Ill. 2d 167, 187 (2005); *Sebby*, 2017 IL 119445, ¶ 50. However, the burden of persuasion remains with defendant. *Herron*, 215 Ill. 2d at 187.

¶ 61   In the case at bar, we must find that the error rises to the level of plain error. As explained above, defendant was never informed of the nature of the alleged violation of probation and was not informed of the potential consequences of a finding that he had violated his probation. More importantly, defendant was provided *incorrect* information as to the basis of the alleged violation, finding out the actual basis only at the time of the hearing. We do not find persuasive the State's argument that defendant would have waived counsel regardless of whether he was properly admonished. The State is correct that defendant was adamant about representing himself, especially with respect to the new DUI charges. However, given the multiple errors in admonishing defendant as to the probation matter, we are unwilling to assume that defendant would have made the same decision had he been given accurate and complete information as to the charges he was facing. Accordingly, we reverse the trial court's judgment and remand for a new probation violation hearing.

¶ 62                                    II. Fitness Hearing

¶ 63   Defendant also claims that the trial court erred in not *sua sponte* conducting a fitness hearing, because he claims that his behavior before and during the violation of probation

- 17 -

hearing showed that a *bona fide* doubt existed as to his fitness. Again, defendant asks us to review this issue for plain error, as he failed to raise it below. See *Sebby*, 2017 IL 119445, ¶ 48 (to preserve a purported error for consideration by a reviewing court, a defendant must both (1) object to the error at trial and (2) raise the error in a posttrial motion). As noted, under the plain-error doctrine, we may consider an unpreserved claim (1) if a clear or obvious error occurred and the evidence is so closely balanced that this error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) if a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence at defendant's trial. *Sebby*, 2017 IL 119445, ¶ 48; *Piatkowski*, 225 Ill. 2d at 565. Since the right to be fit for trial is "fundamental," the question as to a defendant's fitness may be reviewed for plain error under the second prong. *People v. Sandham*, 174 Ill. 2d 379, 382 (1996). However, as noted, the first step under either prong of the plain-error doctrine is to determine whether there was an error at trial and whether this error was clear or obvious. *Sebby*, 2017 IL 119445, ¶ 49; *Piatkowski*, 225 Ill. 2d at 565.

¶ 64    It is well settled that " '[d]ue process bars the prosecution of an unfit defendant.' " *People v. Washington*, 2016 IL App (1st) 131198, ¶ 70 (quoting *People v. Brown*, 236 Ill. 2d 175, 186 (2010)). Under Illinois law, a defendant is presumed to be fit to stand trial, unless, due to a mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. *Brown*, 236 Ill. 2d at 186; 725 ILCS 5/104-10 (West 2018). While a defendant's fitness is presumed, "the circuit court has a duty to order a fitness hearing, *sua sponte*, any time a *bona fide* doubt arises regarding a defendant's ability to understand the nature and purpose of the proceedings or assist in his defense." *Sandham*, 174 Ill. 2d at 382; see also *In re A.Y.*, 314 Ill. App. 3d 1023, 1026 (2000) (finding that a defendant has the right to a fitness hearing in probation-revocation proceedings). Whether a *bona fide* doubt as to a defendant's fitness has arisen is generally a matter within the discretion of the trial court. *Sandham*, 174 Ill. 2d at 382. As noted, an abuse of discretion is found only "where the [trial] court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Baez*, 241 Ill. 2d at 106.

¶ 65    There is a *bona fide* doubt as to a defendant's fitness if there is a "real, substantial and legitimate doubt" assessed against an objective standard. *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991). "Fitness speaks only to a person's ability to function within the context of trial; it does not refer to sanity or competence in other areas." *People v. Coleman*, 168 Ill. 2d 509, 524 (1995); *People v. Taylor*, 409 Ill. App. 3d 881, 896 (2011). A person may be fit for trial although his mind is otherwise unsound. *Coleman*, 168 Ill. 2d at 524; *Taylor*, 409 Ill. App. 3d at 896. To determine whether a *bona fide* doubt exists, a court may consider a defendant's irrational behavior, a defendant's demeanor at trial, and any prior medical opinion on the defendant's competence. *People v. Harris*, 206 Ill. 2d 293, 304 (2002). However, there are no fixed or immutable signs that invariably indicate the need for further inquiry. *Harris*, 206 Ill. 2d at 304-05.

¶ 66    In the case at bar, we cannot say that the trial court abused its discretion by failing to hold a hearing *sua sponte* into defendant's fitness for trial. It is clear that defendant lacked knowledge of legal concepts, as he repeatedly claimed that the new DUI charges had been dismissed during the preliminary hearing. It is equally clear that defendant did not accept the

- 18 -

trial court's explanation of the process, as he kept raising similar arguments despite the trial court's dismissal of his motions. However, defendant's lack of legal knowledge does not render him unfit. Indeed, while defendant claims that his conduct during the violation of probation hearing provides further support for his unfitness, we find the opposite is true. Defendant's defense was that he did not violate his probation because he was not required to report to his probation officer but was only required to report to the trial court. Defendant raised this defense during his argument and questioned the State's witness about it. While this was not a successful defense, defendant nevertheless was able to assert a defense for the claims against him, suggesting that defendant understood the charges against him.[15]

¶ 67      Defendant also points to comments that he claims were "irrational," such as his claims that he was going to "contact the FBI because I'm going to expose some FBI crime" on the day that he was arrested for the new DUI charge. However, after hearing such comments, the trial court ordered a BCX to ensure that defendant did not have any mental health issues preventing him from being fit for trial. The mere ordering of a BCX cannot be construed as a showing that the trial court found a *bona fide* doubt as to the defendant's fitness. *People v. Hanson*, 212 Ill. 2d 212, 222 (2004). Here, after receiving the results of the BCX, the trial court was apparently satisfied with defendant's fitness, and we cannot find that this was an abuse of discretion. While defendant claims that the trial court relied solely on the BCX and failed to consider other factors, defendant's argument overlooks the fact that the trial court was present for the entirety of the proceedings and was able to judge defendant's demeanor and conduct over a long period of time. Thus, there is no evidence that the trial court relied solely on the experts' opinions as to defendant's fitness. As noted, a defendant is presumed to be fit. In the case at bar, therefore, we cannot find that the trial court abused its discretion merely because it failed to expressly explain why it believed that defendant was fit. Consequently, where there was no error, there can be no plain error. See *Sebby*, 2017 IL 119445, ¶ 49 (the first step in a plain-error analysis is determining "whether there was a clear or obvious error at trial").

¶ 68                                  CONCLUSION
¶ 69      For the reasons set forth above, we cannot find that the trial court substantially complied with the Rule 401(a) admonishments in permitting defendant to waive counsel, and we must find that its failure to admonish defendant of the sentencing range rose to the level of plain error. However, the trial court did not abuse its discretion in failing to *sua sponte* order a fitness hearing.

¶ 70      Reversed and remanded.

¶ 71      JUSTICE LAMPKIN, specially concurring:
¶ 72      I concur with the majority's disposition of this appeal. I write separately, however, to clarify the propriety of the court addressing defendant's claim that the trial court failed to *sua sponte* order a fitness hearing in this matter, where we are reversing the finding that

_____

[15]We also note that defendant suggests that he incriminated himself by admitting that he had missed a court date. However, the basis of the violation petition was defendant's failure to report to his probation officer, not his missing a court date.

defendant violated his probation based on the trial court's failure to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).

¶ 73    While we possess significant powers in reviewing criminal cases, we lack the inherent supervisory authority with which our supreme court is imbued. *People v. Flowers*, 208 Ill. 2d 291, 308 (2003). The supreme court has cautioned "that courts of review should not ordinarily consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided." *People v. White*, 2011 IL 109689, ¶ 144.

¶ 74    While at first glance it might appear that our consideration of defendant's fitness claim is not essential to our disposition of this case, I believe that resolution of this question is not only essential but logically precedes our consideration of the adequacy of the trial court's admonishments where it implicates fundamental due process concerns.

¶ 75    The trial of an unfit individual violates due process. See *People v. Eddmonds*, 143 Ill. 2d 501, 512-13 (1991); *People v. Sandham*, 174 Ill. 2d 379, 382 (1996); *People v. Hanson*, 212 Ill. 2d 212, 218 (2004); Ill. Const. 1970, art. I, § 2; U.S. Const., amends. VI, XIV. Due process is also violated by the failure to conduct a fitness hearing when a *bona fide* doubt of a defendant's fitness to stand trial is raised. *People v. McCallister*, 193 Ill. 2d 63, 110-11 (2000).

¶ 76    In *People v. Allen*, 401 Ill. App. 3d 840, 853 (2010), this court rejected the defendant's claim that *Indiana v. Edwards*, 554 U.S. 164 (2008), required a higher standard of competence for a *pro se* defendant conducting his own defense than the general standard of competence required for a represented defendant standing trial. After concluding that the trial court properly permitted the defendant to represent himself *pro se*, the court then considered the validity of the defendant's waiver of counsel. *Allen*, 401 Ill. App. 3d at 853. Although we are reversing defendant's finding of a violation of probation based on the insufficiency of the trial court's admonishments, consideration of this claim remains an essential inquiry.

¶ 77    The majority correctly notes the failure to *sua sponte* order a fitness hearing may be cognizable under the second prong of the plain error doctrine (*People v. Moore*, 408 Ill. App. 3d 706, 710 (2011)) and properly concludes that defendant has failed to establish that the trial court erred by failing to conduct a fitness hearing. I would further note that the trial court exercised an abundance of caution by ordering clinical services to prepare a BCX before granting defendant's request to waive counsel and proceed *pro se*. Such actions properly acknowledged the serious concerns that attend an individual's desire to represent oneself at trial and constituted a sound exercise of judicial discretion.