THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES GILKEY, Defendant-Appellant.

First District (5th Division)   No. 1—92—1150

Opinion filed May 13, 1994.—Rehearing denied June 29, 1994.

COUSINS, J., specially concurring.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant Charles Gilkey (Gilkey) was found guilty of violating his order of probation and was sentenced to 14 years' incarceration with the Illinois Department of Corrections. He appeals his conviction and sentence raising four issues: (1) whether his waiver of the right to counsel (Gilkey represented himself *pro se* at the revocation hearing) was valid; (2) whether the trial court abused its discretion in revoking his probation; (3) whether his sentence is improper; and (4) whether the credit allotted to him for time served was incorrectly calculated. The facts of the case are recounted below.

On July 17, 1990, Gilkey entered a plea of guilty to the charge of burglary and was sentenced to five years' probation. The order of probation included the requirement that Gilkey submit to long-term inpatient care for his admitted addiction to heroin, cocaine and alcohol. The order indicated that Gilkey was to be committed immediately to Hines Veterans Administration Hospital so that he could commence his inpatient treatment and that he subsequently be committed to North Chicago Veterans Administration (VA) Hospital for long-term in-patient treatment.

The record indicates that Gilkey successfully completed the treatment program offered at Hines, which is a short-term program lasting only 21 or 28 days. However, for reasons unknown, he did not enter the long-term in-patient treatment program at North Chicago VA Hospital upon his release from Hines. Instead, Gilkey returned to his addiction and life of crime to support it. Five months later, on December 20, 1990, he was arrested and taken into custody, charged with committing a burglary on December 19, 1990. Thereafter, on March 11, 1991, the State filed a petition charging Gilkey with violating probation. The petition alleged the following:

(1) that on August 14, 1990, Gilkey was arrested and charged with the offense of retail theft, that the case was continued until October 5, 1990, at which time he failed to appear before the court and a $5,000 bond forfeiture warrant was issued;

(2) that on November 16, 1990, Gilkey was arrested and charged with the offense of possession of a stolen motor vehicle, that the case was continued until November 28, 1990, at which time he

failed to appear before the court and a $2,000 bond forfeiture warrant was issued;

(3) that Gilkey was refused admittance for drug treatment through the VA Hospitals and that attempts to place him in alternative drug programs were unsuccessful due to Gilkey's failure to keep scheduled appointments; and

(4) that Gilkey failed to report to the adult probation department as ordered by the court, his last report to probation being November 15, 1990.

On September 20, 1991, Gilkey appeared in court on the charge of violation of probation. He informed the court that he wished to represent himself and proceed without the assistance of counsel. Gilkey was fully admonished as to the charges he was facing, the entire realm of possible penalties and the rights he possessed under the law. After Gilkey was admonished and he remained steadfast in his desire to represent himself, the court agreed that Gilkey could proceed *pro se*, although the court appointed the public defender as standby counsel to be available to assist Gilkey if necessary. The court then granted Gilkey a continuance until October 28, 1991, to prepare for the violation of probation hearing.

The half-sheet indicates that on October 28, 1991, the State indicated that it would elect to proceed on paragraph 2 of the violation of probation petition, but that nothing more took place. After one other continuance, Gilkey appeared before the court on December 12, 1991, at which time the State filed a supplemental petition for violation of probation, alleging the burglary that Gilkey was charged with committing on December 19, 1990. The State also indicated at this time that it would be changing its election and would proceed on the violation of probation based on the allegation in the supplemental petition. The court allowed the State to file the supplemental petition, over Gilkey's objection. The court also noted that the underlying burglary charge alleged in the supplemental petition was a pending case before Judge Manion and that Gilkey had answered ready in that case and was demanding trial. Therefore, there appeared no reason why they should not be able to proceed on the violation of probation hearing charging the same underlying offense. Nevertheless, the court granted Gilkey's request for another continuance to prepare to respond to the violation of probation alleged in the supplemental petition.

The violation of probation hearing was finally held on January 21, 1992. The State presented evidence which indicated that Gilkey committed the offense of burglary on December 19, 1990, and the court found that the State had proven, not only by a preponderance

of the evidence but beyond a reasonable doubt, that Gilkey had violated the terms of his probation by committing this burglary. The court revoked Gilkey's probation and set the matter for sentencing.

On March 9, 1992, Gilkey's probation was revoked and he was sentenced to an extended term of 14 years' imprisonment in the Illinois Department of Corrections. He was given credit for 457 days time served.

In his first issue on appeal, Gilkey claims that he should be given a new revocation hearing because his waiver of counsel was invalid. This claim of error is based upon the fact that, after he waived counsel and decided to proceed *pro se*, the State filed a supplemental petition which added a new allegation of violation and it was this new allegation that the State later elected to use to prove Gilkey's violation of probation. Because the supplemental petition was filed three months after Gilkey waived the assistance of counsel, his waiver of counsel was made prior to the time that he was admonished regarding the nature of the alleged violation relied upon by the State to prove its case and which the court ultimately relied upon to revoke his probation. Due to this circumstance, Gilkey now contends that his waiver of counsel was not knowing and understanding.

Gilkey correctly recites the guidelines that a court must follow before permitting a probationer to waive counsel. The trial court must address the probationer in open court and determine whether he understands: (1) the purpose of the revocation proceeding and the nature of the violation of the condition of probation upon which it is based; (2) the minimum and maximum sentences that may be applied; and (3) the rights to which he is entitled, including the right to confrontation, cross-examination and representation by counsel. (134 Ill. 2d R. 401(a); *People v. Baker* (1983), 94 Ill. 2d 129, 133, 445 N.E.2d 769; *People v. Barker* (1975), 62 Ill. 2d 57, 59, 338 N.E.2d 385.) Gilkey does not deny that these guidelines were adhered to and admits that he was adequately admonished on September 20, 1991, regarding the charge of violation of probation with respect to the specific allegations contained in the original petition, the range of penalties to which he would be subject if found in violation of probation and his rights under the law. His sole contention is that his waiver was invalidated because, subsequent to his waiver of counsel, the State amended the violation petition to include the December 19, 1990, burglary offense which was later used to substantiate the charge of violation of probation. We disagree.

First of all, we note that Gilkey failed to include this claim of error in his motion for rehearing. When a defendant claims error on appeal but has failed to include that error in a post-hearing motion

for reconsideration, this court may deem the matter waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) We shall not discard this issue on the basis of waiver, however, because we choose to address the merits of the argument.

■ We further note that there is case law which states that when a defendant renounces counsel and elects to stand alone, but receives the "technical assistance" of counsel, there is no waiver of counsel and Rule 401(a) admonishments need not be given. (See *People v. Timmons* (1992), 233 Ill. App. 3d 591, 599 N.E.2d 162; *People v. Bliey* (1992), 232 Ill. App. 3d 606, 597 N.E.2d 830; *People v. Smith* (1985), 133 Ill. App. 3d 574, 479 N.E.2d 24.) In this case the trial court required the public defender to remain in the courtroom and continue as "stand-by counsel." Thus, there is a basis for finding that Gilkey did not waive counsel in the strictest sense and that full admonishment was not required.

In response to this matter, Gilkey argues that because the record in this case does not reflect that he actually consulted standby counsel, the cases cited above are distinguishable. (See *People v. Derra* (1981), 92 Ill. App. 3d 1106, 416 N.E.2d 688; *People v. Brown* (1980), 80 Ill. App. 3d 616, 399 N.E.2d 1374.) We do not believe that the record must affirmatively demonstrate that the *pro se* defendant sought the advice of counsel during proceedings or that standby counsel actually participated in the proceedings before it can be said that the defendant received assistance of counsel. Nevertheless, it is unnecessary to decide here the issue of whether the presence of standby counsel obviates the need for full admonishment in accordance with Supreme Court Rule 401(a). This is because we believe that the record clearly shows that Gilkey was sufficiently admonished and his waiver of counsel was knowing and understanding.

In reaching this conclusion we considered the question of whether Gilkey, who had validly chosen to waive counsel, should have been readmonished in accordance with the guidelines set forth in *Barker* and *Baker* when the petition charging him with a violation of probation was amended or supplemented to include the new allegation of violation. We have found no case law directly on point. We have decided, however, that no additional admonishments were required and that the original waiver of counsel was valid and remained so even though the burglary offense had not yet been added to the violation of probation petition.

As discussed in *People v. Reed* (1987), 160 Ill. App. 3d 606, 513 N.E.2d 1193, in order for a waiver of counsel to be valid there must be compliance with the guidelines set forth in Supreme Court Rule 401(a), which were made applicable to probation revocation hearings

by *Barker*. Whether there must be strict compliance or "substantial compliance" has been the subject of a fair amount of discussion. What the case law has revealed, however, is that the difference between the two standards is essentially superficial since those courts which have indicated that "substantial compliance" was sufficient have interpreted the term very narrowly. Basically, what must be shown is that any deficiency in the admonishments must not prejudice the defendant, either because he was already aware of the information that was omitted or because his degree of legal sophistication made it evident that he was aware of the information that compliance with the rule would have conveyed. In other words, as our supreme court indicated in the *Barker* and *Baker* cases, the dispositive issue to be determined when deciding whether a waiver of counsel at a probation revocation hearing is valid is whether the waiver of counsel was knowingly, understandingly and effectively made, in light of the entire record.

A review of the record in this case shows that when Gilkey waived his right to the assistance of counsel he was made fully aware of the nature of the proceedings and the charge against him, *i.e.*, the offense of violation of probation, as well as the minimum and maximum penalties that could be applied, and his rights under the law. In addition, he was made aware that the violation of probation was supported by several allegations, including failure to attend drug treatment, failure to meet with his probation officer and his commission of other crimes while on probation. It is true that Gilkey was not specifically told, at the time he waived counsel, that the charge of violation of probation could also be supported by the additional allegation concerning the commission of burglary on December 19, 1990. Nevertheless, the record reveals that Gilkey was fully aware of this fact, even though the offense had not yet been added to the violation petition.

The transcript of the waiver hearing shows that at the time Gilkey waived counsel he was well acquainted with the fact that he had a burglary charge pending. Gilkey explained to the judge that he had been arrested and held in custody since December 20, 1990, as a result of that charge. In addition, and even more significant, is the discussion held at a hearing on August 16, 1991, prior to the time that Gilkey waived counsel. At that hearing there was an extensive discussion between the judge and Gilkey regarding Gilkey's position due to the burglary charge that was also pending. At that hearing Gilkey stated:

> "So, I plead guilty Judge Manion court [the burglary case] then it's no sense in having a hearing on probation because I will be

automatic plea guilty to Judge Manion case, that will make me violation of probation."

We believe that the discussion that Gilkey conducted with the judge at the August hearing and the statement quoted above clearly indicate that Gilkey understood the ramifications of the burglary charge before he waived counsel, despite the fact that it was not included on the petition. Furthermore, Gilkey possessed a high degree of legal sophistication, which he apparently derived through "on-the-job training" as a result of his extensive criminal career. Gilkey's presentence investigation at the time he appeared before the court on the violation of probation petition showed that he had 13 sentences for incarceration between 1968 and 1988 for a myriad of convictions, including armed robbery, burglary, theft, and deceptive practices. His record also included a host of misdemeanor convictions. In all, Gilkey had a total of 32 convictions or bond forfeitures at the time he was sentenced to probation. Gilkey's discussions with the trial judge, which are reflected in the transcripts made part of the record before this court, show that Gilkey knew his way around the courtroom and was capable of conducting legal research on his case. Consequently, we must conclude that Gilkey's high degree of legal sophistication, coupled with the fact that he was fully cognizant of the nature of the burglary offense at the time he waived counsel, even though this offense was not included in the violation petition until later, warrants our finding that Gilkey's waiver of counsel was knowingly and intelligently made.

The next issue raised by Gilkey is whether the trial court abused its discretion in revoking his probation before he was able to receive the drug treatment that was prescribed by the order of probation. Gilkey argues that his failure to obtain the treatment was not voluntary because the drug treatment facilities to which he was referred would not accept him, either because their programs were full or because he was ineligible based upon the criteria for admission. He claims that he should be returned to probation so that he can get the treatment that was prescribed by the order of probation.

Although the rationale of Gilkey's argument is sound and supported by case law (see *People v. Clark* (1990), 206 Ill. App. 3d 741, 565 N.E.2d 28; *People v. Hamelin* (1989), 181 Ill. App. 3d 350, 537 N.E.2d 3; *People v. Carter* (1988), 165 Ill. App. 3d 169, 518 N.E.2d 1068), the circumstances of this case make it distinguishable and justify the trial court's action in revoking probation.

As noted above, at the time Gilkey was placed on probation he had an extensive criminal record spanning some 20 years. Despite this record, the trial court agreed to sentence Gilkey to probation on

the recommendation of the State due to Gilkey's cooperation and because Gilkey gave the court assurances that he was serious about rehabilitation. It seems that the trial court also believed that Gilkey, a veteran, was accepted in the Hines and North Chicago VA Hospital treatment programs, since they were mentioned specifically in the order of probation.

At the sentencing hearing after the violation of probation, the trial court had to consider the fact that, although Gilkey successfully completed Hines' 21-day program, upon his release from the Hines program, he immediately returned to his criminal proclivities. Gilkey argues that, because of his 23-year addiction to cocaine, heroin and alcohol, it was to be expected that he would return to crime without the long-term in-patient intervention. While this may be true, the trial court had no guarantee that Gilkey could obtain long-term in-patient treatment. TASC (Treatment Alternatives to Street Crimes) found Gilkey ineligible, Gilkey reported that he was rejected by a number of treatment programs and the court was made aware of no long-term in-patient program which was willing to accept him. In addition, no one attempted to explain why Gilkey did not enter the North Chicago VA Hospital, as prescribed in the order of probation or why, as a veteran, he was not being assisted by the Veteran's Administration in obtaining the treatment he needed.

■ In light of the situation, we find no abuse of discretion in the trial court's finding that Gilkey's incarceration was necessary for the protection of the public. Gilkey admitted that without in-patient treatment he would likely return to criminal activity. Despite his professed commitment to rehabilitation, his past history made him a poor candidate for treatment programs and he was found ineligible for that reason. Thus, the trial court could not reasonably expect that Gilkey would be able to comply with the mandates of the order of probation to obtain treatment, even if probation was continued. Consequently, we affirm the trial court's sentence of incarceration. See *People v. Brown* (1989), 194 Ill. App. 3d 958, 553 N.E.2d 712.

In his third issue, Gilkey claims that he should be remanded for resentencing because the record indicates that the sentence imposed subsequent to the violation of probation was based, not on the original burglary offense, but on his conduct subsequent to the grant of probation. We disagree.

■ When a trial court imposes sentence following revocation of probation, the trial court must sentence the defendant based upon the original offense. But the trial court may also consider defendant's conduct on probation in assessing his history, character and rehabilitative potential. (*People v. Reznick* (1986), 141 Ill. App. 3d

593, 491 N.E.2d 444.) It is true that in the present case the trial court discussed, in some detail, Gilkey's conduct while on probation. However, this was done in contemplation of his request to be returned to probation for treatment, pursuant to section 10—102 of the Illinois Alcoholism and Other Drug Dependency Act. (Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 6360—2.) Gilkey's main concern was that he be resentenced to probation for treatment and, therefore, it was the main topic of discussion at sentencing. Nevertheless, the trial court specifically stated that it recalled the original offense of burglary, recalled admonishing Gilkey as to the possible sentences at that time, and took into consideration all matters in aggravation and consideration. Reference to Gilkey's conduct subsequent to probation was mentioned by the trial court as assessing his rehabilitative potential. Therefore, we see no purpose in remanding this case for resentencing.

The last issue is whether Gilkey was credited with the proper amount of time against his sentence for time already served. Gilkey was given credit for 457 days. This was calculated as follows: 123 days for March 16, 1990, through July 27, 1990; 332 days for April 11, 1991, (when he came before the court on the violation petition), until the date of sentencing on the violation of probation; and 2 days for time served on another matter. Gilkey contends that the trial court's calculations were in error and that he should have been given 460 days using the trial court's time periods. In addition, Gilkey claims that he should have been credited for time served from December 20, 1990, until April 11, 1991, since he had been arrested and held in custody during that period based upon the burglary offense, which was later used to substantiate the violation of probation petition.

The State argues that, even if the trial court's calculation for the time periods listed were incorrect, Gilkey was wrongly given credit for two days time served on an unrelated charge. Therefore, the one-day error in calculation that would result is *de minimus* and waived by a failure to raise the issue below. In addition, the State contends that the trial court was correct in failing to give Gilkey credit for time served on the burglary offense, even though it served as the basis for the violation of probation. The State cites *People v. Woznick* (1991), 209 Ill. App. 3d 1061, 568 N.E.2d 425, and *People v. Kane* (1985), 136 Ill. App. 3d 1030, 484 N.E.2d 296, in support of this position. Gilkey admits that the holdings of the *Woznick* and *Kane* cases are against him, but argues that they should not be followed.

■ We find that the record does not accurately reflect what days Gilkey served on unrelated charges and what time he served on

charges related to this matter. Furthermore, because an error in credit calculation is not waived (*People v. Donnelly* (1992), 226 Ill. App. 3d 771, 589 N.E.2d 975), we remand the matter for the sole purpose of having the trial court recalculate the appropriate amount of credit to which Gilkey is entitled.

Affirmed and remanded with instruction.

McNULTY, J., concurs.

JUSTICE COUSINS, specially concurring:

I reluctantly concur in the remand for the sole purpose of instructing the trial court to recalculate the credit to which *Gilkey* is entitled for time served prior to sentencing on March 9, 1992. My review of the calculations set forth and discussed in the briefs establishes that the defendant should be credited with 458 days in custody. The record shows that the trial court granted defendant 457 days credit against his sentence. According to calculations by the defendant, the credit allowed by the trial court included two days for custody on another unrelated case, No. 91—C6—60589 in the circuit court of Cook County. The defendant claims 460 days' credit by virtue of his reexamination of the court's calculations to determine the number of days allowable for each of the months during which he was in custody. He also claims entitlement to an additional 113 days' credit for time which he spent in custody in connection with his arrest on an unrelated burglary case, No. 91—CR—00685 in the circuit court of Cook County. Illinois courts have uniformly held that a defendant shall not be given credit for jail time served on an unrelated charge even if that unrelated charge later becomes the subject violation of a probation petition. (See *People v. Woznick* (1991), 209 Ill. App. 3d 1061, 568 N.E.2d 425; *People v. Leggans* (1986), 140 Ill. App. 3d 268, 488 N.E.2d 614. *People v. Kane* (1985), 136 Ill. App. 3d 1030, 484 N.E.2d 296.) So, the defendant is not entitled to credit for the time that he was in custody in either case No. 91—CR—00685 or No. 91—C6—60589.

Relative to the claims of the defendant for additional credit, the State argues that, even assuming that the defendant is correct in his reexamination of the court's calculations, including credit for two days regarding case No. 91—C6—60589, the defendant is entitled to only one day more of credit than the court allowed because credit for the two days in case No. 91—C6—60589 was erroneously allowed and must be deducted. The argument of the State is well founded. Therefore, in my view, based upon the briefs and arguments in this

case, the doubt, if any, which exists involves only one day. The State virtually concedes that the defendant is entitled to credit for 458 days in custody. On appeal, we can so hold. Accordingly, the cause should be affirmed and remanded with directions that the trial court allow the defendant credit for 458 days in custody.