**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200547-U

Order filed November 14, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0547 Circuit No. 20-CF-204 |
| JEREMY D. CHARBONNEAU, | ) ) ) | Honorable Howard C. Ryan Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The court did not violate defendant's sixth amendment right to counsel. The court erred by failing to make a preliminary *Krankel* inquiry into defendant's posttrial claims of ineffective assistance of counsel.

¶ 2     Defendant, Jeremy D. Charbonneau, appeals his unlawful delivery of a controlled substance conviction. Defendant argues that the La Salle County circuit court denied him the sixth amendment right to counsel at his initial appearance and failed to comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) prior to allowing him to waive his right to

counsel. Defendant further argues that the court erred when it failed to conduct a preliminary inquiry, pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), into his posttrial claims of ineffective assistance of counsel. We affirm in part and remand with directions.

¶ 3                                                    I. BACKGROUND

¶ 4        The State charged defendant with unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2020)). Defendant was arrested pursuant to a warrant which indicated bond had already been set. On June 24, 2020, when defendant initially appeared before the court, the State noted that defendant was charged with unlawful delivery of a controlled substance, it had tendered him a copy of the charge, probable cause was given at the time the warrant was issued, and bond had been set. A docket entry from that date indicates that defendant was "tendered a copy of the charge and acknowledges receipt in open Court." The information alleged that on or about January 1, 2020, defendant knowingly delivered less than one gram of a substance containing heroin. The State informed the court that defendant was considering whether to retain counsel and suggested a date for appearance with counsel and possible arraignment.

¶ 5        The court advised defendant he had been charged with a Class 2 felony and the possible sentence he faced (3 to 7 years' imprisonment), including the extended term (3 to 14 years' imprisonment). It advised him regarding mandatory supervised release (MSR), fines, assessments, and potential consequences if he was not a citizen. Defendant confirmed he understood. The court stated its understanding that defendant was considering hiring his own attorney, and defendant indicated that was correct. The court told defendant "If you're unable to do so, you can always apply for the public defender. Do you understand?" Defendant replied affirmatively. The court stated it would set the matter for July 2, 2020, for an appearance with counsel. Defendant interjected and asked if he could have his bond reduced. The court told him

the request needed to be in writing. The court noted the public defender's office was present with regard to bond. The public defender stated that they would need to interview defendant to file a bond reduction motion. The court stated, "If you were hired by him, that's correct." The court reiterated that a warrant was issued, the amount of bond, and the next court date. It then advised that if defendant failed to attend court he could be tried, convicted, and sentenced without being present. Defendant stated he understood. Defendant then asked, "Is there any way I could talk to a public defender right now?" The court replied, "Well, unless you're appointed—unless he's appointed to represent you, no." Defendant stated, "No? All right." The court told defendant "Because he only talks to the people he's appointed to represent." Defendant replied, "All right."

¶ 6        On July 2, 2020, the State advised the court that defendant was unrepresented and they were there for an appearance with counsel and possible arraignment. The State further advised that it spoke to defendant about counsel, and he "indicated today he's going to kind of stay *pro se* with the option of possibly ask for the public defender at the next court date." The court inquired if defendant understood, and he agreed he did. The court set the matter for July 16, 2020. It told defendant he could represent himself, hire an attorney, or apply for the public defender, and confirmed that defendant understood. Defendant stated that he was going to represent himself, and the court told him that if he changed his mind to send notice and they would contact the public defender. It further advised that if on July 16 defendant still wanted to represent himself there were other issues they needed to discuss.

¶ 7        On July 14, 2020, the State filed a notice of special sentencing range notifying defendant it was seeking to add three years to any sentence he would receive due to the presence of fentanyl in the drugs he delivered. The notice of filing included a proof of service on defendant that was dated July 13, 2020.

3

¶ 8            On July 16, 2020, the State notified the court that it offered defendant the services of the public defender's office but he indicated he wanted to represent himself. The State noted that they were in court for arraignment. The court elicited from defendant that he was 44 years old, had a twelfth grade education, did not suffer from any mental disabilities and had previously been in criminal court. The court advised defendant that he was charged with a Class 2 felony, the sentencing range, including the extended term, and MSR. It did not advise him of the potential three-year fentanyl add-on. The court further advised defendant of the potential for probation, conditional discharge, fines, and assessments, including the street value fine which it described as the court making a determination of the amount of substance defendant had in his possession and what it would sell for on the street. Additionally, the court informed defendant of the consequences if he was not a citizen and that a conviction or guilty plea could have future consequences including the imposition of greater punishments. Furthermore, the court explained that a conviction or guilty plea could affect where defendant could work or live and could also affect his ability to obtain housing and retain or obtain firearms and licenses. The court confirmed that defendant understood. It also advised him of his rights, including a jury trial, to be proven guilty, the presumption of innocence, and to remain silent. Defendant indicated he understood. Defendant confirmed he was going to represent himself but continue trying to find a private attorney. The court stated, "you can always ask me to appoint the public defender for you in the future" and confirmed defendant understood. The court also advised that in representing himself defendant would have to follow procedures, would not receive any special privileges, and would be at a disadvantage. The court confirmed no one was forcing defendant to represent himself. It reiterated if defendant changed his mind, he could ask the court to appoint him counsel. The matter proceeded to arraignment where the State advised the court of the charge

4

and that it provided a copy to defendant. The court confirmed defendant received a copy of the indictment and defendant waived a reading.

¶ 9        Two hearings later, on September 8, 2020, at defendant's request, the court appointed the public defender to represent defendant. On October 2, 2020, while represented by counsel, defendant waived his right to a jury trial. The matter proceeded to a bench trial on October 6, 2020, and the court subsequently entered its ruling finding defendant guilty on October 13, 2020. Thereafter, on October 30, 2020, defendant wrote a letter to the court, which was filed, stating that he received ineffective assistance of counsel and alleging counsel refused to file any of his motions. Counsel then filed a motion for new trial arguing the court erred by granting the State's motion *in limine*, allowing a video and photograph into evidence without sufficient foundation, and by admitting the substance into evidence without a sufficient chain of custody. Counsel further alleged defendant was not proven guilty beyond a reasonable doubt. Defendant filed a *pro se* motion for new trial, again alleging ineffective assistance of counsel in that counsel would not file pre-trial motions for defendant and would not communicate with defendant. Defendant also raised an issue of not being allowed to communicate with the State and various issues with the evidence at trial.

¶ 10        At the sentencing hearing, the court heard counsel's motion for new trial. The court did not address or mention defendant's motion or his allegations of ineffective assistance of counsel. Counsel's motion was denied, and the matter proceeded to sentencing. The State and defense counsel agreed that with the fentanyl add-on defendant faced a sentencing range of 6 to 17 years' imprisonment. The court explained it was bound to add three years due to the presence of fentanyl but stated the sentencing range was 6 to 10 years' imprisonment as far as what the court would consider. It sentenced defendant to six years' imprisonment. Defendant appeals.

5

¶ 11                                    II. ANALYSIS

¶ 12                                  A. Right to Counsel

¶ 13        Defendant argues that the court denied his sixth amendment right to counsel at his initial appearance on June 24, 2020, and his waivers of counsel at this initial appearance and his arraignment on July 16, 2020, were invalid because the court failed to substantially comply with Rule 401(a) before allowing him to represent himself.

¶ 14        As an initial matter, defendant failed to preserve this issue by not including it in a posttrial motion or otherwise raising the issues below. See *People v. Estrada*, 394 Ill. App. 3d 611, 626 (2009) ("It is axiomatic that arguments may not be raised for the first time on appeal."). Defendant attempts to avoid forfeiture by briefly stating counsel provided ineffective assistance by not bringing the errors to the court's attention and provides a parenthetical case citation noting that review is compelled where a claim of ineffective assistance is based on counsel's failure to file a posttrial motion. But defendant fails to provide any argument or analysis regarding prejudice and therefore we decline to address the merits of the ineffective assistance claim. See *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29 ("A reviewing court is entitled to have issues clearly defined with *** cohesive arguments presented; this court is not a repository into which an appellant may foist the burden of argument and research.").

¶ 15        Defendant further argues that these issues are nonetheless reviewable under the plain error doctrine and, more specifically, that our courts have found second-prong plain error when there has been a violation of the sixth amendment right to counsel and/or a failure to comply with the requirements of Rule 401(a). Second-prong plain error exists where the right to counsel has been denied at a critical stage of proceedings, including when the deprivation exists due to an invalid waiver of counsel based upon inadequate Rule 401(a) admonishments. See *People v.*

*Vernon*, 396 Ill. App. 3d 145, 150, 152-53 (2009). The first step in applying the plain error doctrine is to determine if a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

> "[U]nder the plain error doctrine, the existence of an error is not enough to avert a forfeiture, even if the error is genuinely an error. Not even reversible error is enough. *** The plain error doctrine is not a backdrop to catch merely arguable issues that could have been raised in the trial court. The error had to be manifest or patent." *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 17.

¶ 16    The sixth amendment provides a defendant the right to assistance of counsel during all critical stages of the prosecution. *People v. Williams*, 358 Ill. App. 3d 1098, 1104 (2005). A critical stage is a "stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134 (1967). "In pretrial phases, 'the test [for a critical stage] utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary.' " *Vernon*, 396 Ill. App. 3d at 153 (quoting *United States v. Ash*, 413 U.S. 300, 313, (1973)). Additionally, a critical stage has been said to be any proceeding " 'where events occur that could prejudice the defendant's trial.' " *Id.* at 154 (quoting *People v. Lindsey*, 309 Ill. App. 3d 1031, 1034 (2000)).

¶ 17    As to defendant's claim that he was denied the sixth amendment right to counsel at his initial appearance, we first note that it is not clear that he was denied counsel. Defendant indicated he was considering hiring private counsel. Although he inquired if he could speak to the public defender, the court advised him that he could not unless the public defender was appointed to represent him. At that point, defendant did not request that the public defender be

7

appointed. Thus, there is no clear and obvious error. See *Hammons*, 2018 IL App (4th) 160385, ¶ 17. Regardless, the initial appearance was not a critical stage because it was not a proceeding where (1) his substantial rights could be affected, (2) events occurred that could prejudice him at trial, or (3) he required the aid of counsel to meet his adversary. By the time of the initial hearing, probable cause had already been found and bond set. All that transpired at this hearing was defendant was advised of the charge and potential consequences and the court set a date so that defendant could make a decision as to counsel. As such, any purported denial of counsel did not violate the sixth amendment right to counsel.

¶ 18       Rule 401(a) requires that prior to accepting a defendant's waiver of counsel, the court inform defendant of and determine defendant understands: (1) the nature of the charge; (2) the minimum and maximum sentences; and (3) the right to counsel, and if indigent, to have counsel appointed. Substantial compliance with the rule is sufficient if the record indicates the waiver was made knowing and voluntary and the admonishments defendant received did not prejudice his rights. *People v. Wright*, 2017 IL 119561, ¶ 41.

> "Basically, what must be shown is that any deficiency in the admonishments must not prejudice the defendant, either because he was already aware of the information that was omitted or because his degree of legal sophistication made it evident that he was aware of the information that compliance with the rule would have conveyed." *People v. Gilkey*, 263 Ill. App. 3d 706, 711 (1994).

¶ 19       With respect to the initial appearance, it is not clear that Rule 401(a) admonishments were required because defendant was not electing to represent himself, but rather he indicated a desire to hire private counsel. Thus, any purported failure to provide admonishments would not amount to a clear or obvious error necessary to invoke the plain error doctrine. See *Hammons*,

2018 IL App (4th) 160385, ¶ 17. Alternatively, this initial hearing was not a critical stage of the proceedings such that there is no violation of defendant's right to counsel and the basis for concluding that failures under Rule 401(a) amount to second-prong plain error does not exist. Regardless, the court substantially complied with Rule 401(a) when it ensured, after the State set forth the charge and indicated defendant received a copy of the charge, that defendant understood he was charged with a Class 2 offense, the potential sentencing range, and that he could apply for the public defender. See *Wright*, 2017 IL 119561, ¶ 41.

¶ 20        Next, defendant mentions that the court failed to provide him any admonishments at the July 2, 2020, hearing but does not argue this alone was reversible error. Regardless, this was not a critical stage of the proceedings because nothing transpired other than the matter being continued. Therefore, even if admonishments were required at this point, the failure to provide them would not amount to second-prong plain error.

¶ 21        Regarding the July 16, 2020, hearing, defendant argues that the court failed to comply with Rule 401(a) by failing to adequately advise him of the nature of the charge and potential sentence where it failed to advise that the State was seeking the three-year fentanyl add-on. As to the nature of the charge, it is clear that the court did not advise defendant of the charge against him at this hearing. However, the court did note the class of offense and admonished defendant regarding the street value fine where it indicated the fine would depend on how much of the drug defendant had in his possession, which alerted defendant that the nature of the charge involved drugs. Those facts in conjunction with the fact that defendant was present when the State advised that defendant was charged with unlawful delivery of a controlled substance and gave defendant a copy of the charge in court just three weeks prior provided defendant with notice of the nature of the charge against him. Based on the foregoing, the court substantially complied with Rule

9

401(a). Additionally, the omission of the nature of the charge admonishment during the July 16, 2020, hearing did not prejudice defendant, as he was already aware of the omitted information. See *Gilkey*, 263 Ill. App. 3d at 711 ("Basically, what must be shown is that any deficiency in the admonishments must not prejudice the defendant, *** because he was already aware of the information that was omitted.").

¶ 22        Turning to the sentencing admonishments, although the court advised defendant of the applicable sentencing ranges, it failed to advise defendant of the three-year add-on for fentanyl possession and the State had filed their notice of intent to seek the add-on prior to the hearing. However, in *Wright*, 2017 IL 119561, ¶ 54, the court held that a court substantially complied with Rule 401(a) where it incorrectly told the defendant he faced a maximum of 60 years' imprisonment when he faced 75 years' imprisonment. In doing so, the court noted that the defendant was not prejudiced by the misstatement, he did not make an allegation he would not have represented himself had he known the maximum, and although he was eligible for 75 years' imprisonment, the court imposed a 50-year sentence. *Id.* ¶ 56. Similarly, here, defendant does not allege that he would not have represented himself for the brief time he did if he had known of the fentanyl add-on and he was not prejudiced because he was sentenced within the typical, nonextended sentencing range even with the fentanyl add-on.

¶ 23        Finally, the record shows that defendant's decision to represent himself was made knowingly and voluntarily. Specifically, the court questioned defendant as to his level of education, mental health, and experience with the criminal justice system, and further explained he would be at a disadvantage and why. The court also advised defendant of his rights and defendant confirmed he was not being forced to represent himself. Based on the foregoing, we conclude that defendant's waiver of the right to counsel was valid.

10

¶ 24    Last, we note that defendant makes arguments regarding compliance with a statutory right to counsel at his initial appearance (725 ILCS 5/109-1(a-5) (West 2020)). However, he does not argue this issue as its own basis for reversal. Moreover, even if he was attempting to do so, he did not raise the issue below and fails to make any argument that failure to comply with that statute constitutes reversible plain error. See *People v. Hillier*, 237, Ill. 2d 539, 545 (2010) (defendant has the burden of establishing plain error and "[a] defendant who fails to argue for plain-error review obviously cannot meet his burden of persuasion").

¶ 25                                    B. *Krankel*

¶ 26    Defendant argues that this matter must be remanded because the court failed to make an initial *Krankel* inquiry into his posttrial claims of ineffective assistance of counsel. The State concedes the matter must be remanded. The record is clear that the court failed to make an initial *Krankel* inquiry into defendant's ineffective assistance of counsel claims. See *People v. Nitz*, 143 Ill. 2d 82, 134-35 (1991) (providing that a preliminary *Krankel* inquiry is conducted in order to determine whether to appoint counsel to pursue defendant's claims of ineffective assistance of counsel). Therefore, we accept the State's concession and remand this matter for the court to conduct a preliminary *Krankel* inquiry into defendant's ineffective assistance of counsel claims. We decline the State's request to enter a limited remand while retaining jurisdiction.

¶ 27                                III. CONCLUSION

¶ 28    We remand the cause for a preliminary *Krankel* hearing and otherwise affirm the judgment of the circuit court of La Salle County.

¶ 29    Affirmed in part and remanded with directions.