2024 IL App (1st) 230584-U

FIFTH DIVISION
September 6, 2024

No. 1-23-0584

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 424 |
| | ) | |
| RASHAD H. WILLIAMS, | ) | Honorable |
| | ) | Geraldine A. D'Souza, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for aggravated vehicular hijacking with a firearm is vacated where the trial court did not substantially comply with Illinois Supreme Court Rule 401(a) before accepting defendant's waiver of counsel.

¶ 2    Following a bench trial, defendant Rashad H. Williams was convicted of aggravated vehicular hijacking with a firearm and sentenced to 30 years in prison. On appeal, Mr. Williams contends that the trial court failed to properly admonish him pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before accepting his waiver of counsel. We agree, vacate his conviction, and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      Mr. Williams was charged by indictment in this case (case No. 17 CR 424) with one count of aggravated vehicular hijacking for allegedly taking a motor vehicle from Cerone Van on or about November 9, 2016, by force or threat of force while armed with a firearm. Mr. Williams was simultaneously charged, in a 41-count indictment in case No. 17 CR 425, with multiple offenses committed on or about November 26, 2016. The charges in case No. 17 CR 425 included the aggravated vehicular hijacking of a different victim, first degree murder, attempted first degree murder, armed habitual criminal, and aggravated discharge of a firearm.

¶ 5      Counsel was appointed to represent Mr. Williams on both cases. In October 2018, the State elected to try Mr. Williams in case No. 17 CR 425 first. On August 20, 2019, Mr. Williams asked the court if he could represent himself. The court told Mr. Williams he could represent himself but had a right to counsel, would be facing experienced attorneys, and faced imprisonment for "the rest of your life." The court ascertained that the extent of Mr. Williams's education was a "little bit of high school."

¶ 6      Specifically in reference to the potential sentences in case No. 17 CR 425, Mr. Williams was informed that he faced imprisonment for 76 years to natural life, based on a minimum 45 years for murder and 31 years for attempted murder. When the State mentioned the aggravated vehicular hijacking charge, trial counsel said, "[T]hat was on a separate date so I think that would be concurrent." The court informed Mr. Williams that aggravated vehicular hijacking is a Class X felony with a mandatory firearm enhancement. The court described the roles counsel would perform for Mr. Williams and reiterated his right to represent himself, to have counsel, and to have counsel appointed if he was indigent. When Mr. Williams affirmed that he wanted to represent himself, and the court accepted his waiver and granted counsel leave to withdraw.

¶ 7    In September 2021, Mr. Williams presented a motion for reduction of bond. The court recited that Mr. Williams was "being held on two matters," with a bond of "250,000 D on the ag[gravated] vehicular hijacking" and "no bail on the first degree murder." Mr. Williams agreed. The court asked if he was "requesting a bond reduction to one or both matters" and he replied, "Both matters." The State's proffer for the "somewhat intertwined" cases described the alleged aggravated vehicular hijacking of Mr. Van of November 9, 2016, as well as the various alleged offenses of November 26, 2016. The court denied the motion to reduce bond.

¶ 8    The State filed a motion for joinder or to allow other-crimes evidence, including an uncharged incident on November 14, 2016, also involving Mr. Van's car. In his response, Mr. Williams expressed his understanding that he was not indicted for his alleged acts on November 9, 2016, but only for the events of November 26, 2016. The motion was argued on March 10, 2022. In denying the State's motion for joinder and granting its other-crimes motion, the court explained to Mr. Williams that he was indicted in this case for the aggravated vehicular hijacking on November 9, 2016, and would receive a copy of the indictment.

¶ 9    In April 2022, the court again reminded Mr. Williams, as it had at other court dates, of his "right to have a free attorney representing you." Mr. Williams declined the court's offer to appoint counsel and demanded trial. He waived his right to a jury trial in case No. 17 CR 425, and the court set a May 2022 trial date for that case and continued this November 9, 2016, hijacking case "by agreement."

¶ 10    On the date set for trial in case No. 17 CR 425, Mr. Williams and the State answered ready for trial, but Mr. Williams withdrew his jury waiver. The court again reminded Mr. Williams of his right to appointed counsel and Mr. Williams confirmed that he still wanted to proceed *pro se*. The court scheduled jury selection for May 27, 2022.

¶ 11 On May 27, 2022, the State informed the court that it was changing its election to try this November 9, 2016, hijacking case first. Mr. Williams objected, but the court told him that the State had the right to elect which case to proceed on first. On May 31, 2022, the court again reminded Mr. Williams of his "right to have an attorney *** appointed for you for free." Mr. Williams declined the court's offer to appoint counsel. A jury was selected, with trial to begin the next day, June 1, 2022.

¶ 12 When the parties reassembled in court on June 1, Mr. Williams told the court he wanted a bench trial. The court asked Mr. Williams if he understood that he and the State were answering ready for trial and he said he understood. The court accepted Mr. Williams's jury waiver and the trial commenced.

¶ 13 Mr. Van testified that, on November 9, 2016, he was at a gas station putting air in his tires when he saw Mr. Williams sitting in the driver's seat of his (Mr. Van's) customized white Chevrolet Malibu. Mr. Williams then pointed two firearms at Mr. Van and drove away in the Malibu. As Mr. Van followed his Malibu in a friend's vehicle, he called 911 to report the hijacking He gave his name not as Van, but as Tolbert, his cousin whose name was on the Malibu's title. Mr. Van testified that he did so because he had a child support warrant against him. He also testified that the child support matter had been resolved.

¶ 14 Later in November 2016, Mr. Van's friends informed him of sightings of his distinctive Malibu. Mr. Van went to the vicinity of a sighting on November 26, 2016, where he saw his Malibu and called the police, again giving his name as Tolbert. Mr. Van saw the police arrive, the Malibu crash, and Mr. Williams flee the Malibu on foot pursued by an officer. Mr. Van later learned that a shooting occurred that day related to the pursuit of the person who had taken his car, so he and Mr. Tolbert went together to the police station. On cross-examination, Mr. Van denied that he sold

the Malibu to anyone and denied telling a detective that he was in the process of buying the Malibu from Mr. Tolbert.

¶ 15    Mr. Williams testified that Mr. Van sold him the Malibu on November 9, 2016. On cross-examination, Mr. Williams admitted possibly driving the Malibu on November 26, 2016, when he crashed it in Mr. Van's presence, but he was probably "high off PCP" that day and could not remember.

¶ 16    Following closing arguments, the court found Mr. Williams guilty of aggravated vehicular hijacking. The court asked Mr. Williams if he wanted counsel for sentencing, reminding him that it would appoint counsel if he could not afford an attorney. Mr. Williams replied that he would immediately present his own oral posttrial motion.

¶ 17    In that motion, Mr. Williams argued the insufficiency of the trial evidence, noting there was no security video from the carjacking scene and arguing that Mr. Van was not more credible than himself. The court denied the motion and continued the case to June 27, 2022, for sentencing.

¶ 18    On that day, the court reminded Mr. Williams of his rights to counsel for the posttrial and sentencing proceedings, to continue representing himself, and to have counsel appointed if he could not afford an attorney. The court asked if he understood that he faced a substantial mandatory prison sentence. Mr. Williams said, "I don't believe that I was informed of how much time." The court stated that he faced a prison term of 6 to 30 years, plus a 15-year firearm enhancement, for a total of 21 to 45 years' imprisonment. After noting that Mr. Williams knew the nature of the charge against him due to the trial, and now knew his possible sentence, the court asked if he still wanted to represent himself. Mr. Williams said he did, and that he had a written posttrial motion. The court granted him leave to file it.

¶ 19    In the written motion to vacate his conviction, Mr. Williams argued that the verified

complaint in the instant case was signed by Mr. Tolbert rather than Mr. Van, and therefore the indictment should be dismissed for having a fundamental flaw that could not be amended. The motion also alleged that Mr. Williams "was not admonished properly prior to trial and informed that the complaining victim was *** [Mr.] Tolbert or how much time [Mr. Williams] could be sentenced to for the offense alone without the joinder to" case No. 17 CR 425. Mr. Williams amended his motion in September 2022 to allege that the fundamental flaw in the information, and thus the indictment, was that the State did not file Mr. Tolbert's original complaint. The amended motion did not contain the claim that he had received incomplete admonishments prior to waiving his right to counsel.

¶ 20    Mr. Williams presented his motion to vacate on July 5, 2022. During argument, he remarked that "[m]aybe [he] should have had counsel to advise [him]," who might have seen the purported fundamental flaw in the charge. The court told him he could still have counsel "help you re-craft your motion or file additional motions." The court also reminded him that he faced 21 to 45 years' imprisonment, then asked if he wanted counsel appointed. Mr. Williams answered affirmatively and agreed to enter and continue his motion. The court appointed counsel after finding Mr. Williams indigent. When the court asked Mr. Williams if he also wanted counsel appointed in case No. 17 CR 425, where he faced 45 years to natural life imprisonment for murder, Mr. Williams stated that he declined "at this time." The court continued the case to August 8, 2022.

¶ 21    On that date, the court stated that the proceedings were for sentencing in this case and for the status of case No. 17 CR 425. When the court asked Mr. Williams for his decision regarding counsel, Mr. Williams asked, "[W]hat happened with the motion to vacate arrest and conviction?" In response, the court said, "Sir, on the last court date you said you want an attorney appointed and the public defender was appointed. I'm not sure where they are now." The court then passed the

case for counsel to appear. When the case was recalled, Mr. Williams said he was not waiving his right to present his motion to vacate. The court said he would have to wait for counsel, who was not available until August 11, 2022, and Mr. Williams said he wanted to proceed *pro se*. The court told Mr. Williams that he had already asked for a public defender and that he "cannot go back and forth in order to be dilatory and keep the court proceedings from going forward." Mr. Williams replied that he wanted to proceed *pro se* because he did not want the case delayed by counsel not being ready. The court said, "I'm not going to argue with you," and continued the case to August 11, 2022.

¶ 22 On that date, counsel attended court, said that he needed to review the case file before he could do anything, and declined Mr. Williams's request to meet with him immediately. Mr. Williams then asked to represent himself again. When the court remarked that his right to counsel did not include "the right to play games," Mr. Williams noted that the court told him counsel could amend his motion to vacate but now he could not meet with counsel to discuss it. Noting that counsel would have the opportunity to meet with Mr. Williams in person, the court continued the case to September 22, 2022.

¶ 23 On September 22, Mr. Williams reiterated that he wanted to proceed *pro se* in this case and present his motion to vacate. The court read the charge in this case, told Mr. Williams that he faced 21 to 45 years in prison, and told him that he has the right to appointed counsel at no cost because he was indigent. The court accepted Mr. Williams's waiver of counsel in this case and granted counsel leave to withdraw. The court granted Mr. Williams leave to file his amended motion to vacate his conviction.

¶ 24 On December 30, 2022, the court heard and denied Mr. Williams's amended motion to vacate. Mr. Williams also unsuccessfully challenged the firearm enhancement on the basis that the

evidence was insufficient to prove he was armed with a firearm.

¶ 25　The presentence investigation report showed that Mr. Williams did not complete high school, served juvenile probation for residential burglary, and had three convictions for weapons offenses. Following a sentencing hearing where Mr. Williams again declined the court's offer to appoint counsel, the court sentenced him to 30 years in prison. Mr. Williams was admonished that he had to file a postsentencing motion if he did not want to forfeit any challenge to his sentence, but he did not file such a motion.

¶ 26　　　　　　　　　　　　　II. JURISDICTION

¶ 27　Mr. Williams was sentenced on December 30, 2022, and timely filed his notice of appeal on that same day. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Mar. 12, 2021), governing appeals from final judgments in criminal cases.

¶ 28　　　　　　　　　　　　　III. ANALYSIS

¶ 29　On appeal, Mr. Williams contends that the trial court failed to properly admonish him, pursuant to Illinois Supreme Court Rule 401(a), before accepting his waiver of counsel.

¶ 30　As a threshold matter, Mr. Williams did not claim in his amended posttrial motion that the court failed to properly admonish him under Rule 401(a) before accepting his waiver of counsel. Although he raised a similar issue in his initial motion, arguing he had not been admonished of the sentencing range in this case, he did not include that claim in his amended motion. An amended motion supersedes the original motion. *People v. Bernard*, 2014 IL App (2d) 130924, ¶ 10.

¶ 31　Mr. Williams argues, however, that a forfeited issue may be considered under the plain error doctrine. *People v. Bush*, 2023 IL 128747, ¶¶ 70-71. Under the plain error doctrine, clear and obvious errors not properly preserved for appeal are reviewed if (1) the evidence was so closely

balanced that the finding of guilt may have resulted from the error and not the evidence, or (2) the error was so serious that it affected the fairness of the trial and challenged the integrity of the judicial process. *Id.* ¶ 71. The failure to provide complete Rule 401(a) admonishments is reviewed under the second prong of plain error. *People v. Brooks*, 2024 IL App (3d) 220407, ¶ 14; *People v. Khan*, 2021 IL App (1st) 190051, ¶ 60.

¶ 32 Defendants in all criminal cases have a right to counsel and a right to self-representation, but a defendant's waiver of counsel and choice to represent himself or herself must be knowing, intelligent, and voluntary. *People v. Marcum*, 2024 IL 128687, ¶ 43. The procedure for waiving counsel is governed by Rule 401(a), and substantial compliance with that rule is mandatory. *Id.* ¶ 46.

¶ 33 Rule 401(a) provides:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 34 The admonishments in Rule 401(a) must be given when the court learns that the defendant has chosen to proceed *pro se*, so that the defendant can consider the ramifications of his or her

decision. *Brooks*, 2024 IL App (3d) 220407, ¶ 10. Therefore, admonitions given months before a purported waiver of counsel do not comply with Rule 401(a). *Id.* The "plain language of [Rule 401(a)] requires the trial court to address the defendant in open court *at the time of the waiver*, inform the defendant of the three listed items, and determine that he *understands* them." (Emphases in original.) *People v. Stewart*, 2023 IL App (1st) 210912, ¶ 45.

¶ 35 Courts must substantially comply with Rule 401(a), and substantial compliance exists even if there is some failure to provide all the listed admonishments but that failure did not prejudice the defendant because either (1) "the absence of a detail from the admonishments did not impede [the] defendant from giving a knowing and intelligent waiver," or (2) the defendant's degree of knowledge or sophistication "excused the lack of admonition." *Khan*, 2021 IL App (1st) 190051, ¶ 55. We review *de novo* whether the trial court substantially complied with Rule 401(a), while we review for abuse of discretion whether the defendant's waiver of counsel was knowingly and intelligently made. *Id.* ¶ 46.

¶ 36 Part of the admonishment required by the rule is "the minimum and maximum sentence prescribed by law." Here, the trial court completely failed to admonish Mr. Williams as to the possible sentencing range for aggravated vehicular hijacking, the only charge in this case, before trial proceeded on this case. Indeed, the sentencing range was never described until after trial and during posttrial proceedings. While there was also an aggravated vehicular hijacking charge in case No. 17 CR 425, Mr. Williams was never admonished as to the sentencing range for that offense even there—only that it was a Class X crime with a mandatory firearm enhancement.

¶ 37 The State argues that the trial court substantially complied with Rule 401(a) because the court frequently admonished Mr. Williams of his right to counsel. The State argues that because these "two cases which are factually linked" were proceeding together, to require that each case

be admonished "would be overly formalistic." Again, however, while the court certainly advised Mr. Williams of his right to counsel, it completely failed to advise him of the possible sentence for the charge in this case.

¶ 38    Moreover, the record suggests that when he waived counsel, Mr. Williams might not have even been aware that he had been charged for his alleged acts on November 9, 2016, against Mr. Van. It was not until over two years after he waived counsel that the November 9 incident and Mr. Van were mentioned in court. At that point, Mr. Williams expressed confusion regarding whether this case existed under a separate indictment than case No. 17 CR 425. It is also clear from the record that Mr. Williams did not have the degree of knowledge or sophistication that would excuse the incomplete admonishments. Mr. Williams did not complete high school. His criminal history, with a juvenile probation for residential burglary and three convictions for weapons offenses, was unlikely to convey the knowledge of what sentence he faced in this case.

¶ 39    The State cites two cases, *People v. Gilkey,* 263 Ill. App. 3d 706 (1994), and *People v. Ware*, 407 Ill. App. 3d 315 (2011), in which we held that a court is not required to readmonish a defendant when a new charge was added to a probation revocation petition (*Gilkey*, 263 Ill. App. 3d at 711-12) or when a defendant waived, then requested, and then again waived counsel (*Ware*, 407 Ill. App. 3d at 342-43, 347-48). However, the problem in this case is that Mr. Williams was never admonished about the sentencing range for aggravated vehicular hijacking. Thus, this is not a failure to readmonish, but a failure to admonish in the first place. While in *Gilkey* the specific charge underlying the revocation of probation had changed, the record revealed that the defendant in that case was well aware of the fact that the revocation could be supported by the new charge, and he was fully informed of the nature of the proceeding and the minimum and maximum penalties that could be applied. *Gilkey*, 263 Ill. App. 3d at 711. That is not the case here.

¶ 40    This case is similar to *Khan*, 2021 IL App (1st) 190051. In *Khan*, as in this case, there were two matters pending, and while the court clearly and carefully explained the right to counsel and charges and possible sentences in the pending criminal case, it failed to advise the defendant of the consequences of the probation revocation that was also pending. *Id.* ¶¶ 47-50. This court concluded:

> "There is no dispute that [the] defendant was informed of his right to counsel—the trial court repeatedly informed [the] defendant of this right throughout the proceedings and suggested that [the] defendant would be better served by permitting counsel to represent him. However, [the] defendant was not adequately informed of either the nature of the offense or the applicable sentencing range, meaning that we cannot say that his waiver of counsel was knowing and voluntary." *Id.* ¶ 51.

¶ 41    In this case, as in *Khan*, the trial court carefully and repeatedly explained to Mr. Williams that he had a right to an attorney and the many reasons he should avail himself of that right. But the trial court failed to give the admonishments required by Rule 401(a) in this case. While this lapse on the part of the trial court was certainly understandable in light of these two intertwined cases and the State's belated decision to proceed first in this case, it was plain error that requires us to reverse this conviction.

¶ 42    Because the failure to admonish Mr. Williams pursuant to Rule 401(a) before accepting his waiver of counsel was plain error, we vacate his conviction and remand for a new trial. See *Brooks*, 2024 IL App (3d) 220407, ¶ 14.

¶ 43                                IV. CONCLUSION

¶ 44    For the foregoing reasons, we vacate Mr. Williams's conviction and remand for a new trial.

¶ 45    Vacated and remanded.